IN RE SMITH ET AL., ALLEGED DEPENDENT CHILDREN.

(No. 81-CA-52—Decided March 23, 1982.)

Mr. *Thomas M. Rose,* for appellee Greene County Children Services Board.

Mr. *Christ Theodor,* for appellants Clarence and Mary Jane Smith.

BROGAN, J. By judgment filed June 22, 1981, the Greene County Court of Common Pleas, Juvenile Division, granted permanent custody of Mark Smith and Trina Smith to the Greene County Children Services Board ("board"). Clarence Smith and Mary Jane Smith, the natural parents of Mark and Trina, appeal the judgment to this court.

Assignment of Error No. 1 maintains:

"The trial court erred when it granted a motion for permanent custody on a complaint of dependence where the Children Services Board had failed to prepare and implement a comprehensive reunification plan pursuant to Ohio Revised Code Section 2151.414."

On August 27, 1979, the board filed a complaint in the trial court alleging that Mark and Trina Smith were dependent children. The board requested that it be given temporary custody of the children. By September 6, 1979 judgment, the trial court found the children to be dependent and/or neglected, and therefore ordered that the board be granted temporary custody of Mark and Trina. Review hearings were held on September 18, 1980, and January 30, 1981, the trial court ordering that the board continue temporary custody of the children.

By motion filed February 20, 1981, the board moved the court to award it permanent custody of Mark and Trina Smith. Following the hearing on the matter, the trial court granted permanent custody of Mark and Trina to the board by June 22, 1981 judgment.

R.C. 2151.412 states in pertinent part that when a child is adjudicated a neglected or dependent child, and the

court, pursuant to division (A)(2) or (3) of R.C. 2151.353, orders commitment of the child to the temporary custody of a county children services board, an initial plan shall be submitted to the court by the board, after a reasonable attempt to consult with all parties. Those items to be included in the initial plan are listed in R.C. 2151.412 (B)(1). This initial plan shall be approved by the court prior to execution of the order of disposition of the child.

Pursuant to R.C. 2151.412(C), within sixty days after issuance of the temporary custody order or sixty days after approval of the revised initial plan, the board shall prepare and file with the court a comprehensive reunification plan for the child. The comprehensive reunification plan's requirements are listed in R.C. 2151.412 (D). R.C. 2151.412 became effective on October 24, 1980.

R.C. 2151.413 (A) reads:

"A county department, board, or certified organization that is granted temporary custody pursuant to an order of disposition under division (A)(2) or (3) of section 2151.353 of the Revised Code of a child that is not abandoned or orphaned or of an abandoned child whose parents have been located may file a motion in the court that made the disposition of the child requesting permanent custody of the child if a period of at least six months has elapsed since the order of temporary custody was issued or the submission of the revised initial plan if the child is an abandoned child whose parents have been located."

This statute also became effective on October 24, 1980.

Finally, R.C. 2151.414 provides in part that, upon the filing of a motion for permanent custody of a child by the board, a hearing shall be conducted to determine, in part, if the board has made a good faith effort to implement the initial and comprehensive reunification plans for the child that were approved by the court. Again, R.C. 2151.414 became effective on October 24, 1980.

Appellants contend in this action that the board failed to file an initial plan and a comprehensive reunification plan with the court, although four months passed between passage of the above-mentioned statutes and the filing of the board's motion for permanent custody. In appellants' view, the requirements of R.C. 2151.412, 2151.413 and 2151.414 are mandatory, and were in effect at the time of the hearing on temporary custody last preceding the motion for permanent custody. Thus, according to appellants, the trial court could not award permanent custody to the board as the requirements of the Revised Code were not met.

Section 3 of Am. Sub. H.B. No. 695, the law of this state concerning the phase-in of R.C. 2151.412, 2151.413 and 2151.414, states:

"The second annual review made after the effective date of this act of any child who is in temporary custody upon the effective date of this act pursuant to a court order under Chapter 2151 of the Revised Code or pursuant to section 5103.15 of the Revised Code, which annual review is made pursuant to section 5103.151 of the Revised Code, shall include a comprehensive reunification plan prepared in accordance with division (D) of section 2151.412 of the Revised Code for the child if he is not abandoned or orphaned, a report on the attempts made to locate the parents of the child if he is an abandoned child, or a report on the attempts made to find a relative of the child who will take permanent custody of the child if he is an orphaned child.

"Upon the filing of the second such annual review made after the effective date of this act, the court shall hold a hearing to inquire into the future plans that the agency filing the report has for the placement of the child or for the return of the child to his parents."

Mark and Trina Smith were placed in the temporary custody of the board by September 6, 1979 judgment. At that time, no initial plan nor comprehensive reunification plan was mandated by the

Revised Code. Further, before the occurrence of a second annual review of the case following October 24, 1980, the board filed a motion for permanent custody of the children. *Ergo,* there was no necessity that a written comprehensive reunification plan as contemplated by R.C. 2151.412 be prepared.

Nevertheless, the trial court found in its June 22, 1981 judgment that the board had made a good faith effort to implement a plan of reunification for the Smith family. After a complete review of the record, we find that there is sufficient credible evidence to support the trial court's finding. Therefore, although no written plan was prepared by the board, the board had indeed complied with the spirit of the Revised Code sections in issue.

The assignment of error is without merit.

Assignment of Error No. 2 states:

"Failure to provide appointed counsel to an indigent parent in a dependency or neglect proceeding for custody of such parent's children violates their right to due process under the Fourteenth Amendment of the United States Constitution and the Ohio Constitution and the termination of parental rights is a reversible error."

Appellants contend that (1) at the shelter care hearing on August 28, 1979 at which time the trial court granted emergency custody of the children to the board and (2) at the temporary custody hearing on September 6, 1979, appellants were not represented by an attorney. Mr. Clarence Smith testified that in August 1979 at the temporary custody hearing, he did not have an attorney. Asked on cross-examination why he did not have an attorney, Mr. Smith stated: "I went on Second Street to get Legal Aid and Legal Aid said they would be up here on the date of trial; but they didn't show up."

First, we conclude that the record does not support any finding that appellants were not explained their right to be represented at the temporary custody hearing by counsel and to have counsel appointed if they were indigent. In fact, the summons to Mr. and Mrs. Smith stated that any party was entitled to counsel in the proceedings and the court would appoint counsel if the parties were indigent. Further, the September 6, 1979 judgment of the trial court (1) finding the children to be dependent and (2) ordering that the board be granted temporary custody of Mark and Trina was a final appealable order. See *In re Rule* (1963), 1 Ohio App. 2d 57 [30 O.O.2d 76]. Any issue as to whether appellants were denied appointed counsel should have been raised at that time on appeal.

Finally, we note that in the action before this court initiated by the board's motion requesting permanent custody, appellants were represented by counsel.

The assignment of error is overruled.

The final assignment of error states:

"The trial court erred in permitting a Doctor of Psychology to testify and express opinions based upon interviews and communications with appellants where such testimony was given over objection and without consent of the appellants."

Doctor Ester Battle, a clinical psychologist, testified that she interviewed Mr. and Mrs. Smith, the two having been brought to her office by a caseworker, Charlene Prestopino. Based on the interviews Dr. Battle had with Mr. and Mrs. Smith, Dr. Battle testified as to her opinions, observations, and conclusions concerning the Smiths' ability to provide parental care.

Mr. Smith testified that he did recall in approximately October 1980, that he and his wife went to Dr. Battle for a psychological examination. Mr. Smith indicated, when asked on direct examination whether he could have refused to be examined, that, "[s]he said we had to go."

Appellants contend that the doctor's testimony is inadmissible under R.C. 4732.19, the psychologist-client privilege. R.C. 4732.19 states that the psychologist's and client's confidential rela-

tions and communications are placed upon the same basis as those between physician and patient.

The rationale for excluding material evidence offered by a treating physician is to encourage open disclosure by the patient to the doctor in order to facilitate proper diagnosis and treatment. *In re Winstead* (1980), 67 Ohio App. 2d 111, 114 [21 O.O.3d 422]. As is further stated in *In re Winstead*:

"* * * The crucial prerequisite for creation of the privilege is the voluntary consultation by the patient. This must be present to create the privilege in the patient, for if the patient is not voluntarily seeking help, then the underlying rationale for the privilege is not present, *i.e.,* the promotion of free and full discourse between physician and patient.

Thus, there is no reason to exclude the relevant and material testimony of such physician." *Id.* at 115.

Here, there exists no psychologist-client privilege, for the crucial prerequisite for creation of the privilege, the voluntary consultation by the client, is absent. The appellants in this case were not voluntarily seeking help, but rather went to Dr. Battle at the request of the board. *Ergo,* the underlying rationale for the privilege is not present in this action.

The assignment of error is not well-taken.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

KERNS, P.J., and WILSON, J., concur.