**Sandra HOWES, Plaintiff–Appellant,**

v.

**UNITED STATES of America,
Defendant–Appellee.**

No. 88–4168.

United States Court of Appeals,
Sixth Circuit.

Submitted June 8, 1989.

Decided Oct. 19, 1989.

Richard W. Divine, Dayton, Ohio, for Sandra Howes.

Jan M. Holtzman, Asst. U.S. Atty., Cincinnati, Ohio, for U.S.

Before KEITH and GUY, Circuit Judges; and HULL, Chief District Judge.[*]

RALPH B. GUY, Jr., Circuit Judge.

Sandra Howes appeals the district court's grant of summary judgment in favor of the United States in this action for the negligent breach of doctor/patient confidentiality by military and civilian doctors employed at the Wright Patterson Air Force Base (WAFB) in Dayton, Ohio. We are persuaded that the district court properly entered summary judgment for the government and, accordingly, affirm.

Sandra Howes is the dependent wife of United States Air Force Technical Sergeant John A. Howes. Sergeant Howes was assigned to the 1815 Operational Test and Evaluation Squadron at WAFB and was responsible for maintaining and repairing extremely sensitive cryptologic machines at various sites around the world. The sensitive nature of his responsibilities required him to have a high-level security clearance. Around July 1983, Mrs. Howes sought psychological treatment and advice from Dr. Douglas C. Griffith, a civilian clinical psychologist employed by the United States at WAFB.[1] At that time, Mrs. Howes was having difficulty coping with her husband's infidelity. She visited Dr. Griffith on several occasions for treatment of this problem.

In October 1985, Mrs. Howes returned to Dr. Griffith with new complaints of stress related to her husband's excessive use of alcohol and marijuana. She sought Dr. Griffith's assistance and intervention with her husband's problem, and her deposition testimony together with Dr. Griffith's treatment notes indicate that she was not seeking treatment for herself. Dr. Griffith advised Mrs. Howes that such intervention

---

[*] The Honorable Thomas G. Hull, Chief Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

1. Dr. Griffith reportedly was not licensed in the state of Ohio.

was beyond his expertise as a psychologist and suggested that the Social Actions office at WAFB was the appropriate office for advice on such matters.[2] He advised her that he would seek consultation on how to proceed, and they agreed to follow up on the matter at a later date. In January 1986, Mrs. Howes returned to Dr. Griffith and complained that the problem had persisted and worsened. Dr. Griffith explained his need for clarification on security issues from liaison staff and from the clinic chief. Dr. Griffith's notes again indicate that Mrs. Howes was seeking advice and not treatment. He then contacted the Social Actions office to discuss the problem but did not mention Mrs. Howes by name. He also consulted with his supervisors, Lieutenant Colonel Tenaglia and Colonel Ibis Sigas, M.D., regarding how to proceed, purportedly with Mrs. Howes' consent. Again, he did not mention Mrs. Howes by name. Dr. Sigas is a psychiatrist and served as the chairwoman of the Department of Mental Health at WAFB. She advised Dr. Griffith that he must follow Air Force regulations requiring all personnel to report known or suspected incidents of illegal drug abuse to WAFB authorities. Following these consultations, Dr. Griffith contacted and advised Mrs. Howes of his obligation to report the matter to her husband's commander, Social Actions, or the Office of Special Investigation, particularly in light of her husband's duties and security clearance. At that time, Mrs. Howes complained that her confidentiality had been breached. Dr. Griffith responded that he had only consulted with the others at her request. Although Mrs. Howes had no further contact with Dr. Griffith, she subsequently filed a complaint with the Hospital Commander about the alleged breach of confidentiality. Her complaint was referred to Dr. Sigas, who then contacted Dr. Griffith. Dr. Griffith explained that Mrs. Howes was the patient he had previously discussed with her anonymously. Dr. Sigas, in the course of her investigation, had access to Dr. Griffith's entries in the medical records documenting his sessions with Mrs. Howes.

On January 30, 1986, Mrs. Howes met with Dr. Sigas regarding the alleged breach of confidentiality. At that time, however, she reiterated her concerns about her husband's involvement with marijuana. Dr. Sigas determined that Dr. Griffith had not breached any obligation of confidentiality and advised Mrs. Howes that she (Dr. Sigas) was obligated to report Sergeant Howes' drug abuse to his commander. Dr. Sigas, relying on the information revealed to her by Mrs. Howes, did report the drug abuse to Sergeant Howes' commander, the Air Force Office of Special Investigations, and to WAFB security. Mrs. Howes claims that, in so doing, Dr. Sigas also impermissibly breached the confidentiality inherent in their psychiatrist/patient relationship. Sergeant Howes subsequently was ordered to undergo urinalysis, which confirmed his marijuana use. Accordingly, Howes was reprimanded, his security clearance was revoked, and he was required to undergo drug rehabilitation. He was not court-martialed[3] and suffered no financial loss because of the reprimand.

Mrs. Howes filed suit against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80, based on Dr. Griffith's revelations concerning her husband's marijuana use and on Dr. Sigas' further revelations to WAFB authorities.[4] She sought $16.75 in lost wages, $40,000 in lost benefits and entitlements, and $500,000 in compensatory damages. The parties consented to trial before a United States

---

**2.** Dr. Griffith's treatment notes indicate that Mrs. Howes had already contacted the Social Actions office. She was given a pamphlet on drinking and was advised that if her husband did not seek treatment or things worsened, the staff could intervene.

**3.** No court-martial action was initiated because the urinalysis was performed pursuant to a mili-

tary order rather than to a search warrant. Sergeant Howes was court-martialed in May 1987, however, in connection with an unrelated drunk-driving incident.

**4.** By letter dated January 14, 1987, Mrs. Howes' claim was denied by the United States Air Force because federal law required disclosure and because no compensable injury took place.

magistrate pursuant to 28 U.S.C. § 636(c).[5] After other proceedings not pertinent to the present appeal, both parties filed cross motions for summary judgment. On November 17, 1988, the government prevailed and Howes' complaint was dismissed with prejudice. This appeal followed.

## I.

Our review of a district court's grant of summary judgment is governed by the principles set forth in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), in which the Supreme Court stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Id.* at 322–23, 106 S.Ct. at 2552 (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

The Federal Tort Claims Act subjects the United States to liability, as though it was a private person, "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Accordingly, Ohio law governs this case.

Ohio law recognizes a right to privacy belonging to patients of physicians, including psychiatrists, Ohio.Rev.Code Ann. § 2317.02(B), as well as to patients of psychologists, Ohio Rev.Code Ann. § 4732.19. The right essentially confers a privilege upon a patient to prevent the testimony of a physician or psychologist concerning a communication made to him by the patient, absent the patient's consent. Section 2317.02 provides, in pertinent part:

> The following persons shall not testify in certain respects:
>
> . . . .
>
> (B)(1) A physician concerning a communication made to him by his patient in that relation or his advice to his patient, except as otherwise provided . . . .

Section 4732.19 provides, in pertinent part:

> The confidential relations and communications between a licensed psychologist or licensed school psychologist and client are placed upon the same basis as those between physician and patient under division (B) of section 2317.02 of the Revised Code. Nothing in this chapter shall be construed to require any such privileged communication to be disclosed.

In addition to conferring on patients the right to prevent their doctors' testimony concerning a privileged communication, Ohio law also recognizes a cause of action for a doctor's unauthorized disclosure of such privileged communications. In *Hammonds v. Aetna Casualty and Surety Co.*, 243 F.Supp. 793 (N.D.Ohio 1965), a patient brought suit against his doctor's malpractice insurer for purportedly inducing his doctor to divulge information the doctor acquired about the patient in the course of their patient/doctor relationship. The insurer had falsely told the doctor that the patient was considering a malpractice action against him. Although the patient's cause of action in that case was against the insurer, the court noted that "[m]odern public policy ... demands that doctors obey their implied promise of secrecy." *Id.* at 796. The court also stated that "a doctor who makes an unauthorized divulgence of confidence should respond in damages." *Id.* at 801. The court equated such divulgence of confidence with a breach of an

---

**5.** Section 636(c)(1) authorizes a magistrate, with the parties' consent, to conduct civil proceedings and to order the entry of judgment in a case. Upon entry of such judgment, as here, an aggrieved party is authorized to appeal directly to the appropriate United States court of appeals "in the same manner as an appeal from any other judgment of a district court." 28 U.S.C. § 636(c)(3).

implied condition of the patient/doctor contract under which the patient seeks to be cured and the doctor anticipates payment. The implied condition is that the doctor will not release any confidential information derived in the relationship without the patient's permission. When he does violate his duty of confidentiality, "he is in violation of part of his obligations under the contract." *Id.* The court also characterized an action for a doctor's unauthorized divulgence of confidences as sounding in tort based on the invasion of the privacy of his patient. "The unauthorized revelation of medical secrets, or any confidential communication given in the course of treatment, is tortious conduct which may be the basis for an action in damages." *Id.* at 802. In determining that "a doctor may be legally culpable for an intentional, unauthorized divulgence of confidences," the court noted that patients repose considerable trust in a doctor's skill and discretion such that "the expectation of confidentiality which results therefrom imposes ... fiduciary obligations upon the doctor." *Id.* The court also found that a third party who induces a doctor to divulge patient confidences in derogation of his duty of secrecy is also subject to liability for damages to the patient. *Id.* at 803.

In this case, Mrs. Howes seeks damages for the alleged unauthorized divulgence by Dr. Griffith and by Dr. Sigas of her confidences concerning her husband's alcohol and drug abuse. There are several problems with her claim. For one, even if we assume that Mrs. Howes was consulting Dr. Griffith in a patient/psychologist context in October 1985 when she sought his intervention in her husband's problems, Mrs. Howes has not demonstrated that Dr. Griffith breached any confidence. Dr. Griffith denies having breached her confidence, noting that in any consultation about the matter with his superiors, he had Mrs. Howes' consent and he did not identify Mrs. Howes by name. Dr. Sigas verified that in Dr. Griffith's consultations with her about Mrs. Howes' predicament, Dr. Griffith never disclosed Mrs. Howes' identity or that of her husband. In fact, the record reveals that Dr. Griffith advised

Mrs. Howes in October 1985 and in January 1986 that intervention with her husband's problem was beyond his expertise and that he would confer with the Social Actions department on the base. Mrs. Howes, having already conferred with the Social Actions office herself, reportedly consented. Mrs. Howes produced no evidence refuting this account of events with which to establish a genuine issue of material fact. She relies on the fact that when Dr. Griffith first consulted with Dr. Sigas about the situation, Dr. Sigas was holding a copy of her clinical medical record containing Dr. Griffith's treatment notes. What Mrs. Howes overlooks, however, is that she consented to Dr. Griffith's discussion of her (husband's) problem with his supervisors. Moreover, Dr. Sigas, as Dr. Griffith's superior and the investigator of Mrs. Howes' complaint, properly had access to the medical records.

In considering the claimed breach of confidentiality by Dr. Sigas, we note that in order to be entitled to the privilege of preventing a physician's testimony, a patient must voluntarily seek consultation with the physician. *In re Smith*, 7 Ohio App.3d 75, 454 N.E.2d 171 (1982). "[I]f the patient is not voluntarily seeking help, then the underlying rationale for the privilege is not present, i.e., the promotion of free and full discourse between physician and patient." *Id.* at 78, 454 N.E.2d at 175.

Although it is true that Dr. Sigas obtained from Mrs. Howes the information incriminating her husband and then reported it to the military authorities, there is no evidence that Mrs. Howes sought to establish a patient/psychiatrist relationship with Dr. Sigas. Rather, as Dr. Griffith's superior, Dr. Sigas' interaction with Mrs. Howes was limited to conferring about the alleged impropriety of Dr. Griffith in the context of Dr. Sigas' investigation of Mrs. Howes' complaint. Mrs. Howes produced no evidence that she had approached Dr. Sigas to establish a patient/physician relationship. Rather, the evidence indicates that Dr. Sigas was not treating Mrs. Howes. As the magistrate properly noted, to extend the privilege inherent in the patient/physician

relationship to the relationship of Mrs. Howes and Dr. Sigas would contravene Ohio's policy of construing such privileges strictly, *see State v. Dress*, 10 Ohio App.3d 258, 461 N.E.2d 1312 (1982), and extend the privilege beyond its intended purpose of encouraging complete and candid discussions between patients and physicians in support of treatment. *See Hammonds*, 243 F.Supp. at 797, 801. Although Mrs. Howes may have anticipated that her revelations to Dr. Sigas would be maintained in confidence, we find no legal basis for that anticipation. Dr. Sigas never indicated that her revelations would be kept confidential and, as noted, Mrs. Howes already had been advised by Dr. Griffith of Air Force regulations requiring WAFB personnel to report any incidents of suspected drug abuse. We find no merit to Howes' claim that the January 30, 1986, meeting between herself and Dr. Sigas was a transparent attempt to hide the fact that Dr. Griffith had previously divulged Howes' confidences, including her identity, on January 27, 1986.

Finally, we note that although the *Hammonds* court recognized a cause of action for a physician's unauthorized divulgence of patient confidences, the court also noted that in some cases public policy compels disclosure. "We recognize that the right of privacy and the duty of secrecy are limited by considerations of public policy. We do not recognize an *absolute* privilege." 243 F.Supp. at 800–801 (citation omitted). In this case, the magistrate found it unnecessary to determine whether an Air Force regulation designed to protect national security can validly override the doctor/patient relationship. Nevertheless, the magistrate indicated that the courts of Ohio would uphold the regulation on public policy grounds. Although we, too, find it unnecessary to decide the question in view of the ample grounds on which to affirm the summary judgment ruling, we would be inclined to agree. Sergeant Howes held

a high security clearance position in which he was responsible for working on extremely sensitive cryptologic machines. The risk that a person in such a position may be compromised would likely override the requirement of confidentiality in this case. *See, e.g., State v. Antill*, 176 Ohio St. 61, 197 N.E.2d 548 (1964) (physician, pursuant to statute, required to testify about extent and source of patient's wounds); *State v. Dress*, 10 Ohio App.3d 258, 461 N.E.2d 1312 (court overrides physician/patient privilege to compel testimony regarding blood alcohol level in drunk driving case).

The district court's grant of summary judgment for the United States is AFFIRMED.