DECISION AND JUDGMENT ENTRY
This is an appeal from the decision of the Ross County Court of Common Pleas, Juvenile Division, which granted permanent custody of Appellant Sharon Milella's children to Appellee Ross County Children Services.
In her appeal to this Court, appellant presents six assignments of error: (1) that the juvenile court's order was against the manifest weight of the evidence; (2) that the juvenile court did not have jurisdiction to award permanent custody to appellee; (3) that the juvenile court erred by admitting the testimony of a witness regarding a test undertaken by appellant; (4) that the juvenile court erred by admitting hearsay testimony into evidence; (5) that the juvenile court erred by "holding the hearing on the objections to the magistrate's order before the fourteen days expired to file objections"; and (6) that the juvenile court's decision was not supported by sufficient evidence.
We find appellant's assignments of error to be without merit and affirm the judgment of the trial court.
STATEMENT OF THE CASE AND FACTS
The facts relevant to this appeal concern four children born to Appellant Sharon Milella and Mark Milella: (1) Mark Allen Milella (Mark), born on May 20, 1995; (2) Douglas Milella (Douglas), born on May 16, 1996; (3) Elijah James Milella (Elijah), born on November 20, 1997; and (4) Charles Edward Milella (Charles), born on February 10, 1999.[2]
We present the facts pertinent to this appeal as to each of these children.
At the outset, we note that Mark Milella, the father of the four children here at issue, played virtually no part in the litigation in the juvenile court, and is not a named party in this appeal.
 I.
On January 22, 1997, an employee of Appellee Ross County Children Services filed complaints concerning Mark and Douglas in the Ross County Court of Common Pleas, Juvenile Division (juvenile court). Appellee alleged in the complaints that the children were neglected and should be placed in the temporary custody of itself or a suitable relative.
Also on January 22, 1997, appellee filed an application for the temporary emergency care of Mark and Douglas. On that same day, the juvenile court granted appellee's motion.
On March 3, 1997, a case plan was filed in the juvenile court for these two children. The case plan identified the following six objectives that required substantial completion in order for the children to be reunified with appellant.
(1) The family will work on the neglect issues which have been problematic including providing the children with clean, appropriate housing, appropriate medical care and well-balanced meals.
(2) Sharon Milella will obtain help for her own mental health issues, and will demonstrate progress toward problem resolution as measured by therapist reports and worker observation.
(3) Appropriate supervision will be provided.
(4) Adult family members will have no more instances of domestic violence.
(5) Parents will demonstrate realistic understanding of age appropriate behavior and development
(6) The family will assess and understand why their children were removed and will understand what changes they must make in order for their childaren [sic] to be returned to them.
The stated goal of this case plan was to "return the [children] to parent," to be completed by February 27, 1998.
On March 31, 1997, a magistrate, who was assigned by the juvenile court to hear this case, issued an order, after a hearing on the issue was held, adjudicating Mark and Douglas to be neglected children. On that same day, the juvenile court filed an entry adopting the magistrate's order.
On April 18, 1997, a dispositional hearing was held. On April 21, 1997, the magistrate issued an order granting temporary custody of Mark and Douglas to appellee. On that same day, the juvenile court filed an entry adopting the magistrate's order.
On June 13, 1997, a second case plan was filed in the juvenile court concerning Mark and Douglas. This case plan was identical to the March 3, 1997 case plan: it set forth the identical six objectives required to be completed for the children to be reunified with appellant; it stated the same goal, to "return the [children] to parent"; and, finally, it set forth the same date for completion, February 27, 1998.
On January 7, 1998, the magistrate issued an order extending the temporary custody of Mark and Douglas with appellee for six months. On that same day, the juvenile court filed an entry adopting the magistrate's order.
On July 17, 1998, the juvenile court issued an order extending the temporary custody of Mark and Douglas with appellee "until further order of the court."
 II.
On July 22, 1998, an employee of appellee filed a complaint asserting that Elijah — born eight months earlier, on November 20, 1997 — was a dependent child and should be placed in the temporary custody of appellee or a suitable relative.
Also on July 22, 1998, appellee filed an application for the temporary emergency care of Elijah. On that same day, the juvenile court granted appellee's motion.
On September 25, 1998, appellee filed motions requesting the permanent custody of Mark, Douglas, and Elijah.
On October 14, 1998, appellee filed an amended case plan, concerning Mark, Douglas, and Elijah, with the juvenile court. This document purported to amend the June 13, 1997 case plan to: (1) revise the goal from reunification to adoption, and (2) to add Elijah to the case plan. Appellant contends that neither she nor the guardian ad litem assigned to the children consented to this amended case plan. Further, there is nothing in the record indicating that the juvenile court adopted this amended case plan.
On October 15, 1998, after a hearing on the issue was held, the juvenile court issued an order finding Elijah to be a dependent child.[3]
 III.
On February 10, 1999, appellant gave birth to Charles. The following day, February 11, 1999, an employee of appellee filed a complaint asserting that Charles was a dependent child and should be placed in the temporary custody of appellee or a suitable relative.
Also on February 11, 1999, appellee filed an application for the temporary emergency care of Charles. On that same day, the juvenile court granted appellee's motion.
On February 12, 1999, appellee filed an amended complaint requesting that it be granted permanent custody, instead of temporary custody, of Charles.
On July 7, 1999, the guardian ad litem filed its report with the juvenile court. The recommendation of the guardian ad litem was as follows.
 Due to [appellant's] continued inability to properly care for her children, her lack of desire to complete basic case plan requirements and her lack of interest in visiting with her children, it is the opinion and recommendation of [the guardian ad litem] that the [juvenile court] grant said motions for permanent custody as it would appear to be in the best interest of the minor children.
On July 8, 1999, appellee filed a second amended case plan with the juvenile court. This document purported to amend the June 13, 1997 case plan to include Charles. The stated goal was the adoption of Charles.
On July 8 and 9, 1999, a hearing was held to determine whether appellee should be granted permanent custody of the children. Numerous witnesses testified at this hearing. Pertinent to this appeal are two witnesses who testified on behalf of appellee: Dave Parker, a clinical case manager at Scioto Paint Valley Mental Health Center; and Pam Holsinger, a social worker at Adena Regional Medical Center.
Parker testified that he had evaluated appellant by way of a standardized test called "MMPI." Appellant objected to this testimony on the basis that there was no foundation establishing that this test was accepted in the scientific community. Further, appellant objected on the basis that there was no evidence establishing that Parker was an expert qualified to testify on such matters. The juvenile court judge overruled appellant's objections.
Holsinger testified that she met with appellant at the behest of a physician. She further testified that "the physician had concerns about alcohol use * * * and there was no prenatal care and about whereabouts of other children and the plans and preparedness for this baby and there was also lice, pubic lice and head lice that they had treated the patient for."
Appellant objected to this testimony, asserting that it was hearsay. The juvenile court judge overruled appellant's objection, finding that "[i]t's not offered for it's [sic] truth it is offered for why she was called in * * *."
 IV.
On or about March 1, 2000, the magistrate issued orders finding that appellee should be awarded permanent custody of Mark, Douglas, Elijah, and Charles.
On March 8, 2000, appellant filed requests for findings of fact and conclusions of law, as well as objections to the magistrate's orders awarding appellee permanent custody of the children.[4]
On January 29, 2001, the magistrate filed an amended order with findings of fact and conclusions of law concerning the four children. The magistrate stated, inter alia, in the findings-of-fact section, that "[i]t is highly unlikely, given the attempts to provide services to [appellant], that she will be able to provide proper parental care for the children." The magistrate also found, in the findings-of-fact section, that "[t]he father [, Mark Milella], by his complete lack of involvement in the children's lives and in the proceedings herein, has effectively abandoned his children."
In the conclusions-of-law section, the magistrate found the following: (1) that the juvenile court had jurisdiction; (2) that the father had effectively abandoned the children; (3) that the children should not be placed with either parent; (4) that "[t]he parents have failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside [appellant's] home"; (5) that "[t]he parents have demonstrated a lack of commitment toward the children by failing to regularly support, visit, and communicate with the children"; and, finally, (6) that it was in the best interest of the children to grant appellee permanent custody of them.
On January 30, 2001, the juvenile court issued an entry setting February 6, 2001, as the date for hearing objections to the magistrate's January 29, 2001.
On February 1, 2001, appellant filed a motion with the juvenile court to continue the hearing, alleging that her attorney had a previously scheduled hearing that was in conflict with the juvenile court's hearing. The next day, February 2, 2001, the juvenile court denied appellant's request.
On February 5, 2001, appellant filed a motion with the juvenile court to reconsider its denial of her motion for continuance. Appellant reiterated that her attorney had a conflict. Additionally, appellant noted that, "[u]nder [Juv.R. 40(E)(3),] any party has fourteen days from the filing of the [m]agistrate's [d]ecision which contains [f]indings of [f]act and [c]onclusion[s] of law to file objections. The [m]agistrate's [f]indings of [f]act and [c]onclusion[s] of law were filed on [January 29, 2001]."
On February 5, 2001, appellant also filed objections to the magistrate's January 29, 2001 amended order. Appellant made numerous challenges to the factual findings of the magistrate, arguing that the facts weighed heavier in favor of returning the children to appellant. Appellant also challenged every conclusion of law except the finding that Mark Milella had effectively abandoned the children. Additionally, appellant argued, in a section entitled "Special Objections," the following: (1) that the juvenile court was without jurisdiction to award appellee permanent custody; (2) that the children's case plans were not timely, or correctly, filed or amended; and (3) that the magistrate failed to consider whether appellant's mother, Gloria Woods, could have taken custody of the children before it granted permanent custody of them to appellee.
On February 6, 2001, the juvenile court issued an entry denying appellant's motion for reconsideration. Nevertheless, the juvenile court recessed the hearing until February 9, 2001.
On February 12, 2001, three days after the hearing was held, the juvenile court issued an entry overruling appellant's objections and granting appellee permanent custody of the children. The juvenile court's bases for this conclusion are as follows.
In regard to appellant's objections to the magistrate's findings of fact, the juvenile court found that the facts weighed more heavily in favor of granting permanent custody to appellee.
In regard to appellant's objections to the conclusions of law, the juvenile court held the following.
 Objector fails to set forth her objections with any degree of specificity, but merely alleges that the [c]onclusions of [l]aw "are not supported by the facts" and refers to her "[s]pecial objection." The [juvenile court] find[s] that the [c]onclusions of [l]aw set forth by the [m]agistrate are supported by the evidence and hereby * * * approves and adopts the same.
It is from this order that appellant filed a timely appeal in this Court, assigning the following errors for our review.
FIRST ASSIGNMENT OF ERROR:
 THE COURT ERRED IN SUSTAINING THE MOTIONS AND COMPLAINT OF THE ROSS COUNTY CHILDREN SERVICES AGENCY SEEKING PERMANENT CUSTODY, TERMINATING ALL PATERNAL RIGHTS AND PLACING THE CHILDREN FOR ADOPTION.
 SECOND ASSIGNMENT OF ERROR:
 THE COURT DID NOT HAVE JURISDICTION TO AWARD PERMANENT CUSTODY.
 THIRD ASSIGNMENT OF ERROR:
THE COURT ERRED IN ADMITTING THE TESTIMONY OF DAVE PARKER.
FOURTH ASSIGNMENT OF ERROR:
 THE COURT ERRED IN ALLOWING HEARSAY TESTIMONY INTO EVIDENCE.
 FIFTH ASSIGNMENT OF ERROR:
 THE JUDGE ERRED IN HOLDING THE HEARING ON THE OBJECTIONS TO THE MAGISTRATE'S ORDER BEFORE THE FOURTEEN DAYS EXPIRED TO FILE OBJECTIONS.
 SIXTH ASSIGNMENT OF ERROR:
 THE EVIDENCE WAS NOT LEGALLY SUFFICIENT TO SUPPORT THE JUDGMENT GRANTING PERMANENT CUSTODY.
ANALYSIS
At the outset, we note that appellant's brief is virtually devoid of authority. In appellant's thirty-one-page brief, containing six assignments of error, there is citation to only three cases — though she cites to numerous, generally inapplicable, statutory provisions.
We remind appellant that the Rules of Appellate Procedure permit us to disregard an improperly briefed argument. See State v. Watson (1998),126 Ohio App.3d 316, 710 N.E.2d 340, discretionary appeal disallowed in (1998), 82 Ohio St.3d 1413, 694 N.E.2d 75 (explaining that an appellate court is empowered to disregard an assignment of error presented for review due to a lack of briefing by the party presenting that error); see, generally, App.R. 16(A) (setting forth the proper standards for appellate briefs). Nevertheless, in the interest of justice, we will proceed to address appellant's assignments of error.
 I.
As appellant's First and Sixth Assignments of Error are related, we will address them conjointly. Appellant argues in her First Assignment of Error that the juvenile court's judgment, granting permanent custody of the children to appellee, was against the manifest weight of the evidence. In her Sixth Assignment of Error, appellant contends that the juvenile court's decision was not supported by sufficient evidence. We disagree.
"In a civil case, the test for sufficiency and manifest weight of the evidence is essentially the same." Duvall v. Time Warner EntertainmentCo. (June 25, 1999), Hamilton App. No. C-980515, unreported, 1999 Ohio App. LEXIS 2874; accord Simms v. Heskett (Sept. 18, 2000), Athens App. No. 00CA20, unreported, 2000 Ohio App. LEXIS 4325; see Cole v. CompleteAuto Transit, Inc. (1997), 119 Ohio App.3d 771, 777, 696 N.E.2d 289,293.
Regarding a challenge to the sufficiency of the evidence, a civil judgment need only be supported by some competent, credible evidence going to all the essential elements of the case. See Seasons Coal Co.,Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273; accordParkridge Apts. Ltd. Partnership v. Cleveland (July 17, 1995), Cuyahoga App. No. 67984, unreported, 1995 Ohio App. LEXIS 3018. As to a challenge that the judgment was against the weight of the evidence, an appellate court will not reverse a civil judgment so long as the judgment is supported by some competent, credible evidence. See C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.
Thus, the relevant determination in the matter sub judice is whether the juvenile court's judgment is supported by some competent, credible evidence. See Simms, supra (Wherein we explained that, "[i]n a civil case, * * * the tests for a sufficiency challenge and a manifest weight challenge are essentially the same. * * * Thus, we will examine both arguments under the more traditionally used `manifest weight' standard.").
However, such an analysis must be tempered by two long-standing principles. First, our review of the lower court's judgment must be highly deferential; the existence of "some" evidence will be sufficient to sustain the judgment and prevent a reversal. See Barkley v. Barkley
(1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989, 992; accord Cydrus v.Houser (Nov. 29, 1999), Ross App. No. 98CA2425, unreported, 1999 Ohio App. LEXIS 5746.
Second, irrespective of whether the case is civil or criminal, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; accordHartford Casualty Insurance Company v. Easley (1993), 90 Ohio App.3d 525,630 N.E.2d 6; see, generally, Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276 (explaining that "the trier of fact is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and to use these observations in weighing the credibility of the proffered testimony"). Against this backdrop, we will evaluate the evidence adduced below.
R.C. 2151.414(D) requires juvenile courts to consider specific factors in determining whether the child's best interests would be served by granting a motion for permanent custody. See In re Decker (Feb. 13, 2001), Athens App. No. 00CA039, unreported, 2001 Ohio App. LEXIS 542. These factors include: (1) the interaction and interrelationship of the child with the child's family and others; (2) the wishes of the child, as expressed directly by the child or through the child's guardian adlitem; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement. See R.C. 2151.414(D).
A perusal of the record yields abundant evidence supporting the juvenile court's judgment that it was in the best interest of the children to grant permanent custody to appellee. There is evidence in the record that, inter alia: appellant's visitation with the children, while in the temporary custody of appellee, was sporadic and infrequent; appellant had twelve different addresses from 1997 to 1999; appellant's home was consistently an unsanitary and unhealthy environment for children; the children's guardian ad litem expressed his opinion "that the [juvenile court should] grant * * * permanent custody as [that] would appear to be in the best interest of the minor children"; Mark and Douglas have been in the custody of appellee for more than twelve months, while Elijah and Charles have been in the custody of appellee since shortly after each was born; and a professional that counseled appellant testified that, while she witnessed improvement in appellant, she nevertheless thought that "there were issues that were still unresolved," and that "[appellant's improvement] doesn't seem to be something that [appellant] can maintain or sustain for a period of time."
We note that the foregoing evidence is derived from sources other than those challenged by appellant in her Third and Fourth Assignments of Error; i.e., the disputed testimony of Dave Parker and Pam Holsinger.
Appellant also argues that appellee, or the juvenile court, "did not make a good faith attempt to place the children with extended family * * *." Again, we disagree.
We find evidence in the record that appellee considered placing the children with the children's relatives before seeking permanent custody for itself. In fact, appellant concedes in her brief to this Court that at least Gloria Woods, appellant's mother, was considered by appellee. Nevertheless, appellant argues that R.C. 2151.412(G)(2) was not complied with, "[b]ecause no real explanation was ever given as to why Gloria Woods and other family members were excluded, [appellee] failed to prove that a relative placement was unacceptable and adoption the only alternative."
Our reading of R.C. 2151.412(G)(2) yields a conclusion wholly inconsistent with that reached by appellant. Appellant's reading of R.C.2151.412(G)(2) — that an explanation of an attempt to place the children with a suitable relative must be issued — is strained at best. R.C. 2151.412(G)(2) is one of six guidelines issued by the Ohio General Assembly to aid an agency in developing a case plan. See R.C.2151.412(G)(1)-(6). Specifically, R.C. 2151.412(G)(2) suggests that a children services agency should first look to suitable relatives before requesting permanent custody in itself.[5] It does not require that there need be any explanation or documentation of this effort.[6]
Moreover, there is nothing in the record to indicate that appellee deviated from these guidelines.
Therefore, we find that the juvenile court's judgment is supported by competent, credible evidence. See Seasons Coal Co., Inc.,10 Ohio St.3d at 77, 461 N.E.2d at 1273; accord Simms, supra.
Appellant's First and Sixth Assignments of Error are OVERRULED.
 II.
Appellant argues in her Second Assignment of Error that the juvenile court did not have jurisdiction to award permanent custody to appellee. Appellant bases this conclusion on two sub-arguments: (1) "concerning Elijah and Charles, the Motion and Complaint for permanent custody were filed before six months from the award of temporary custody"; and (2) the children's case plans were not timely, or correctly, filed or amended. We disagree.
We begin by noting that this assignment of error does not involve issues of jurisdiction, but rather raises issues of statutory interpretation and application. R.C. 2151.23 provides juvenile courts a broad grant of subject-matter jurisdiction, including "exclusive original jurisdiction" concerning "any child who * * * is alleged to be a[n] * * * abused, neglected, or dependent child." R.C. 2151.23(A)(1). Clearly, the juvenile court had jurisdiction to determine the proper disposition of the children; appellant's Second Assignment of Error involves solely the proper interpretation, and application, of various provisions of the Ohio Revised Code.
 A.
We first address appellant's argument that the request for permanent custody of Elijah and Charles to be placed with appellee was filed prematurely.
R.C. 2151.413 requires that "[a] public children services agency * * * that, pursuant to an order of disposition under [R.C. 2151.353(A)(2)] * * * is granted temporary custody of a child * * * may file a motion * * * requesting permanent custody of the child if a period of at least six months has elapsed since the order of temporary custody was issued * * *." (Emphasis added.) R.C. 2151.413.
In the instant case, both Elijah and Charles were in the emergency
temporary custody, pursuant to R.C. 2151.31, of appellee. We agree with the position taken by the Sixth District Court of Appeals in In reMassengill (1991), 76 Ohio App.3d 220, 601 N.E.2d 206, which held that an order of emergency temporary custody pending adjudication — as was here ordered for both Charles and Elijah — is not such an award of temporary custody to trigger the six-month rule of R.C. 2151.413.[7]
Thus, a trial court does not err by entertaining a motion for permanent custody filed within six months of an order of emergency temporary custody. See In re Peterson (Mar. 23, 1990), Lucas App. No. L-89-193, unreported; accord In re Covert (1984), 17 Ohio App.3d 122, 477 N.E.2d 678.
 B.
We next turn to appellant's argument that, because the children's case plans were not timely, or correctly, filed or amended, the juvenile court was without jurisdiction to award permanent custody to appellee. We will address appellant's arguments as they relate to each child.
1.
We begin by addressing appellant's argument concerning Mark and Douglas. Specifically, appellant argues that, because there was not a case plan in effect with the specific goal of adoption, that appellee could not be granted permanent custody of these two children. We find this argument to be without merit.
On June 13, 1997, a case plan was entered into concerning Mark and Douglas. The stated objective of this case plan was to reunify the children with appellant. On October 14, 1998, this case plan was amended, without the consent of appellant, to: (1) add Elijah, who was recently born; and (2) change the objective from reunification to adoption.
For an amended case plan to be effective, R.C. 2151.412(E)(2) requires that either: (1) all of the parties agree to the amended case plan; or (2) the juvenile court adopts the amended case plan. Here, the amended case plan was neither consented to by all of the parties, nor is there evidence in the record that the juvenile court adopted it. Accordingly, appellant argues in her brief to this Court that "the original case plan with reunification as a goal is still the only legally effective case plan for Mark and [Douglas]."
While it appears that appellee improperly amended the case plan, the juvenile court still retains jurisdiction — as we discussed earlier — to determine the disposition of the children. See R.C. 2151.23. Nowhere in the Ohio Revised Code, nor in Ohio case law, have we found support for appellant's proposition that there must be a case plan in place with the specific goal of adoption before a party may request that a child be placed in the permanent custody of a children services agency.
However, R.C. 2151.412 does require that a case plan be filed "for any child to whom the agency is providing services * * *." R.C. 2151.412; seeIn re Smith (1982), 7 Ohio App.3d 75, 454 N.E.2d 171; accord In re Grant
(Mar. 12, 1998), Cuyahoga App. No. 71046, unreported, 1998 Ohio App. LEXIS 988 (explaining that R.C. 2151.414 provides that, when an agency seeks permanent custody of a child, the juvenile court must determine,inter alia, whether the agency has made a good faith effort to implement the reunification plan); see, generally, Elmer v. Lucas County Children'sServices Board (1987), 36 Ohio App.3d 241, 523 N.E.2d 540 (explaining that this statute also indicates that "The court shall not deny an agency's motion for permanent custody solely because the agency failed to implement any particular aspect of the child's case plan").
Applying the foregoing to this matter, we find that the record unambiguously demonstrates compliance with R.C. 2151.412: at the very least, the June 13, 1997 case plan was still in effect at the time permanent custody of the children was requested; a concession made by appellant in her brief to this Court. Accordingly, we find no merit to appellant's assertion that the claimed procedural deficiencies occurred below.
2.
We next address appellant's argument concerning Elijah and Charles.
Prior to the request for permanent custody, Elijah and Charles were both in the emergency temporary custody of appellee. The Supreme Court of Ohio has held that a reunification plan need not be prepared when a child is placed in the emergency temporary custody of a children services agency.
The reunification plans necessitated by R.C. 2151.412 pertain only where a child has previously been determined to be dependent, neglected or abused; temporary custody has been committed to a children services board, welfare department or a certified organization; and an order is sought changing temporary to permanent custody. Initial and comprehensive reunification plans are not necessary pursuant to an emergency shelter care order.
In re Moloney (1986), 24 Ohio St.3d 22, 26, 492 N.E.2d 805, 809; see, generally, In re Catlett (Sept. 17, 1982), Lucas App. No. L-82-117, unreported (explaining that "it [is] obvious that the state legislature envisioned circumstances under which the submission of a reunification plan by the children services board would not be necessary"); see, e.g.,In re Baby Girl Baxter (1985), 17 Ohio St.3d 229, 479 N.E.2d 257 (holding that R.C. 2151.42 does not require a juvenile court to order a reunification plan when it grants permanent custody); see, also, Elmer,36 Ohio App.3d at 244, 523 N.E.2d at 543 (explaining that "there is no need to implement a reunification plan when it would be futile"). Consequently, we see no need to address this issue further.
Appellant's Second Assignment of Error is OVERRULED.
 III.
As appellant's Third and Fourth Assignments of Error both involve evidentiary rulings by the juvenile court, we will address them conjointly.
Appellant argues in her Third Assignment of Error that the juvenile court erred by admitting the testimony of Dave Parker, a clinical case manager at Scioto Paint Valley Mental Health Center, who gave testimony regarding a test he administered to appellant. Appellant argues in her Fourth Assignment of Error that the juvenile court erred by allowing the hearsay testimony of Pam Holsinger, a social worker at Adena Regional Medical Center, who testified as to the reasons why a physician instructed her to meet with appellant.
As we discussed earlier, there is ample evidence in the record, aside from the disputed testimony of these two witnesses, to support the lower court's judgment. As a result, appellant's Third and Fourth Assignments of Error are moot: it is of no consequence to appellant whether we find in her favor on these assignments of error. "It is not the duty of a court to decide purely academic or abstract questions." South PacificTerminal Co. v. Interstate Commerce Comm. (1910), 219 U.S. 498, 514,31 S.Ct. 279, 283; see, generally, James A. Keller, Inc. v. Flaherty
(1991), 74 Ohio App.3d 788, 600 N.E.2d 736 ("[T]he courts of Ohio have long recognized that a court cannot entertain jurisdiction over a moot question."); accord Miner v. Witt (1910), 82 Ohio St. 237, 92 N.E. 21
("[T]he duty of * * * every judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.").
Accordingly, we find these assignments of error to be rendered moot by our foregoing analysis; we see no need to address them further.[8] SeeJames A. Keller, Inc., 74 Ohio App.3d at 788, 600 N.E.2d at 736.
Appellant's Third and Fourth Assignments of Error are OVERRULED.
 IV.
Appellant argues in her Fifth Assignment of Error that the juvenile court erred by "holding the hearing on the objections to the magistrate's order before the fourteen days expired to file objections."
We find it unnecessary to engage in a detailed discussion of appellant's assignment of error — specifically, the intricacies of Juv.R. 40(E)(3) — because, assuming, arguendo, that the juvenile court erred, appellant has failed to demonstrate how she was prejudiced by such error.
"In order to justify the reversal of a judgment or decree upon error, the record must show affirmatively, not only that error intervened, but that it was to the prejudice of the party seeking to take advantage of it." Ohio Life Ins. and Trust Co. v. Goodin (1860), 10 Ohio St. 557, paragraph one of the syllabus; see, generally, Smith v. Flesher (1967),12 Ohio St.2d 107, 233 N.E.2d 137 (explaining that, prejudice must be demonstrated in order to justify disturbing the lower court's judgment).
On January 29, 2001, the magistrate filed an amended order with findings of fact and conclusions of law concerning the four children. The following day, January 30, 2001, the juvenile court issued an entry setting the date for hearing objections to the magistrate's order for February 6, 2001. The day before the hearing, February 5, 2001, appellant filed objections to the magistrate's January 29, 2001 amended order.
While this hearing may indeed have been held prematurely, appellant fails to explain to this Court how she was prejudiced by this supposed error. See, generally, Whiteside, Ohio Appellate Practice (2001 Ed.) 37, Section 1.46 (The author explains that "Error alone will not support reversal of a court's judgment. It must be demonstrated not only that error was committed, but also that the error prejudiced the party complaining of it.").
Appellant's Fifth Assignment of Error is OVERRULED.
CONCLUSION
For the foregoing reasons, we OVERRULE appellant's assignments of errorin toto and AFFIRM the decision of the Ross County Court of Common Pleas, Juvenile Division.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
This Court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the ROSS COUNTY COURT OF COMMON PLEAS, JUVENILE DIVISION, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
David T. Evans, Judge.
Abele, P.J., and Kline, J.: Concur in Judgment Only.
[2] A fifth child, Kyle Woods, born to appellant and Julius Simmons on March 4, 1993, is not the subject of this appeal as, during the course of the litigation below, he was placed in the legal custody of Simmons.
[3] We note that the October 15, 1998 order was entitled "Magistrate's Order." However, it was signed by the juvenile court judge, rather than the magistrate.
We also note that, previously, on September 18, 1998, the magistrate issued an order finding Elijah to be a dependent child. However, there is nothing in the record indicating that the juvenile court adopted this order. Nevertheless, the October 15, 1998 order, which was signed by the juvenile court judge, properly adjudicated Elijah to be a dependent child.
[4] We note that appellant requested "leave to amend objections when findings of facts and conclusions of law and the transcript are ready." This request went unanswered by the juvenile court. See, generally, The VCos. v. Marshall (1998), 81 Ohio St.3d 467, 469, 692 N.E.2d 198, 201
("When a trial court fails to rule on a pretrial motion [and proceeds to judgment in the case], it may ordinarily be presumed that the court overruled it."); accord Forsyth v. Brigner (1999), 86 Ohio St.3d 299,714 N.E.2d 922. Nevertheless, appellant restated these same objections in her February 5, 2001 objections to the magistrate's amended order, which set forth the magistrate's findings of facts and conclusions of law. We will discuss the specifics of these objections later in the body of this opinion.
[5] R.C. 2151.412(G)(2) reads as follows.
In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the followinggeneral priorities: * * * If both parents of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, or have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family * * *.
(Emphasis added.) R.C. 2151.412(G)(2).
[6] Appellant appears to have confused R.C. 2151.419 — a provision nowhere mentioned in appellant's brief to this Court — with R.C. 2151.412(G). R.C. 2151.419, unlike R.C. 2151.412(G)(2), does
place an affirmative duty on the trial court to make express findings regarding "the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from his home or enable the child to return home." R.C. 2151.419; see Inre Hulsey (Sept. 12, 1995), Adams App. No. 95CA599, unreported, 1995 Ohio App. LEXIS 4143 (Wherein we held that the trial court erred in failing to make explicit findings regarding whether the agency undertook reasonable actions to reunify the parent and child.); but, see, In re PieperChildren (1993), 85 Ohio App.3d 318, 619 N.E.2d 1059 (explaining that, failing to make such findings may be harmless error if it is apparent from the record that the agency's efforts at reunification were reasonable and the trial court's findings of fact clearly imply the reasonableness of the agency's efforts).
Of course, this provision is inapplicable to appellant's argument: appellant's argument, in this context, is not that there was a failure to explain or issue findings regarding the attempt to reunify the children with their parents, but, rather, that there was a failure to explain or issue findings regarding the effort to place the children with a suitable relative. Again, we do not find R.C. 2151.412(G)(2) — nor R.C.2151.419, for that matter — as support for such a proposition.
[7] We note that former R.C. 2151.413 required that a children's services agency seeking permanent custody of a child must have had temporary custody of the child for at least six months immediately preceding the filing of the motion for permanent custody. See In re Hayes
(1997), 79 Ohio St.3d 46, 679 N.E.2d 680 syllabus; In re Miller (1995),101 Ohio App.3d 199, 655 N.E.2d 252. However, R.C. 2151.412(A) was amended, effective September 18, 1996, to eliminate this requirement. SeeIn re Grant (Mar. 12, 1998), Cuyahoga App. No. 71046, unreported, 1998 Ohio App. LEXIS 988.
[8] Nevertheless, we do note that appellee's reliance on Juv.R. 34(B)(2) is misplaced. Juv.R. 34(B)(2) provides that "Except as providedin [Juv.R. 34(I)], the court may admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence." (Emphasis added.) Juv.R. 34(B)(2). Juv.R. 34(I) provides, in relevant part, "The Rules of Evidence shall apply in hearings on motions for permanent custody." Juv.R. 34(I). Accordingly, contrary to appellee's brief, the Rules of Evidence apply in this case because the evidence here at issue was presented during the course of a permanent-custody hearing.