In re MILLER, Appellee;

Baker, Appellant.

[Cite as *In re Miller* (1995), 101 Ohio App.3d 199.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 14196.

Decided Feb. 15, 1995.

*Mathias A. Heck, Jr.,* Montgomery County Prosecuting Attorney, and *Carla Y. Jones,* Assistant Prosecuting Attorney, for appellee.

*Richard Nystrom,* for appellant Mariena M. Baker.

FREDERICK N. YOUNG, Judge.

Mariena M. Baker appeals from a judgment rendered by the Juvenile Division of the Montgomery County Court of Common Pleas, which granted the Montgomery County Children Services Board ("MCCSB") permanent custody of her daughter, Coriena Iris Miller.

Coriena Iris Miller was born on July 29, 1988. From the time of her birth until December 8, 1988, Coriena lived in foster care due to Mariena's psychiatric condition at that time. From December 1988 to May 1990, Coriena lived with Mariena and (after Mariena was married) her stepfather, Sam Baker.

On May 23, 1990, Coriena was removed from her home by police and placed with the MCCSB. She was found with a black eye, a large bruise on her face, and small faint bruises on her upper left thigh. According to medical personnel who examined her, all of the bruises were of different ages.

On May 24, 1990, the MCCSB filed a complaint in the Juvenile Division of the Montgomery County Common Pleas Court, alleging that Coriena was an abused child and requesting that it be granted temporary custody of her. After finding that Coriena was an abused child, the trial court committed her to the temporary custody of MCCSB on June 13, 1990.

On February 28, 1991, the MCCSB moved for an extension of Coriena's commitment to its temporary custody. On April 19, 1991, the trial court dismissed MCCSB's motion for an extension of temporary custody and granted Mariena's oral motion to terminate temporary custody. The court did grant the MCCSB protective supervision over Coriena, who was returned home. On October 25, 1991, the MCCSB filed a motion for permanent custody and interim order of temporary custody. One basis for the motion was that Coriena was found to have multiple bruises on her buttocks, the severity of which were allegedly inconsistent with a spanking. Following a shelter care hearing on October 31, 1991, the trial court committed Coriena to the temporary custody of the MCCSB on an interim basis. A pretrial hearing on the motion for permanent custody was set for November 13, 1991.

After a number of continuances, a hearing on the MCCSB's motion for permanent custody of Coriena was finally held before a referee on July 9, 1992. The referee issued a report and recommendation on October 21, 1992, and an amended report and recommendation on December 28, 1992. Finding that Mariena was unable and unwilling to provide adequate care to Coriena, the referee recommended that the MCCSB's motion for permanent custody be granted. Upon overruling Coriena's stepfather's objections to the referee's amended report and recommendation, the trial court adopted the referee's recommendation and made it the order of the court.

Mariena filed a timely appeal and now presents us with the following assignments of error:

"I. The trial court erred in awarding permanent custody of appellant-mother's minor child to the Montgomery County Children Service Board because the state did not follow the statutorily required procedural steps in violation of appellant's

constitutional right to due process under the Fourteenth Amendment of the United States Constitution and Article I Section 10 of the Ohio State Constitution.

"II.  The juvenile court erred in denying appellant-mother custody of her minor child because the state did not meet the requisite burden of proof in violation of appellant's constitutional right to due process under the Fourteenth Amendment of the United States Constitution and Article I Section 10 of the Ohio State Constitution."

Having carefully examined the record in this case as well as the provisions contained in R.C. Chapter 2151.01, we conclude that the trial court lacked the authority to rule on the MCCSB's motion for permanent custody of Coriena, since the MCCSB did not have temporary custody of Coriena pursuant to an order of disposition under R.C. 2151.353(A)(2) at the time it filed the motion as required by R.C. 2151.413(A).

▮  A public children services agency may seek permanent custody of an abused, neglected, or dependent child in one of two ways.  First, the agency can seek permanent custody at the initial disposition hearing pursuant to R.C. 2151.353(A)(4) following an adjudication of abuse, neglect, or dependency.  Second, it can seek permanent custody at a postdispositional hearing held pursuant to R.C. 2151.414 upon its filing of a motion requesting permanent custody pursuant to R.C. 2151.413.  It has been held that "permanent custody should only be granted at the initial disposition hearing under extreme situations where reunification is not possible." *In re Smart* (1984), 21 Ohio App.3d 31, 35, 21 OBR 33, 37, 486 N.E.2d 147, 151.  Hence, for the most part, permanent custody will be awarded to a public children services agency only at a postdispositional proceeding.

R.C. 2151.413(A) provides:

"A public children services agency or private child placing agency that, pursuant to an order of disposition under division (A)(2) of section 2151.353 of the Revised Code or under any version of section 2151.353 of the Revised Code that existed prior to the effective date of this amendment, is granted temporary custody of a child who is not abandoned or orphaned or of an abandoned child whose parents have been located may file a motion in the court that made the disposition of the child requesting permanent custody of the child if a period of at least six months has elapsed since the order of temporary custody was issued or the initial filing of the case plan with the court if the child is an abandoned child whose parents have been located."

R.C. 2151.414(A) provides, in pertinent part:

"Upon the filing of a motion pursuant to section 2151.413 * * * of the Revised Code for permanent custody of a child by a public children services agency or private child placing agency that *has* temporary custody of the child, the court shall schedule a hearing and give notice of the filing of the motion and of the hearing * * * to all parties to the action and to the child's guardian ad litem." (Emphasis added).

■ When R.C. 2151.413 and 2151.414 are construed with reference to each other, we believe that the following conclusion is inescapable: In order for a public children services agency to file a motion for permanent custody of a child previously adjudicated as abused, neglected, or dependent, it must have *current* temporary custody of that child "pursuant to an order of disposition under [R.C.] 2151.353[ (A)(2) ]." R.C. 2151.413(A).

■ In this case, the MCCSB, at one time, had been granted temporary custody of Coriena pursuant to R.C. 2151.353(A)(2), but that grant of temporary custody was terminated in April 1991, when Coriena was returned to her home and placed under protective supervision. Thus, when the MCCSB filed its motion for permanent custody of Coriena, the MCCSB only had protective supervision of her. This was insufficient to give the MCCSB standing to bring a motion for permanent custody pursuant to R.C. 2151.413(A).

One of the claims made by Mariena Baker in support of her first assignment of error was that the state had failed to provide her with a contemporary adjudicatory hearing on the MCCBS's claim that Coriena had been subjected to further abuse upon being returned home under protective supervision. In response to this claim, the MCCSB argued that this case fell "under the ambit of R.C. 2151.413 and R.C. 2151.414, which authorize [the MC]CSB to move for permanent custody of Coriena unencumbered by readjudication of her abuse."

In presenting this argument, the MCCSB urged this court to liberally construe R.C. 2151.413(A) to require only that a public children services agency have had, at one time, temporary custody of the abused, neglected, or dependent child for a period of at least six months before filing a motion for permanent custody, and not to require the agency to have temporary custody at the very time it files a motion for permanent custody. The MCCSB further insisted that this interpretation is called for by R.C. 2151.01. That section reads as follows:

"The sections in Chapter 2151. of the Revised Code * * * shall be liberally interpreted and construed so as to effectuate the following purposes:

"(A) To provide for the care, protection, and mental and physical development of children subject to Chapter 2151. of the Revised Code;

" * * *

"(C) To achieve the foregoing purposes, whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety[.]"

We cannot accept the MCCSB's proposed interpretation of R.C. 2151.413(A). In our view, the legislature intended to allow only public children services agencies that have current temporary custody of an abused, neglected, or dependent child pursuant to an order of disposition under R.C. 2151.353(A)(2) to move for permanent custody of that child "unencumbered by readjudication" of the issues of whether the child is, in fact, abused, neglected, or dependent. See R.C. 2151.414(A) (last sentence). Evidence of this intent can be seen in the first part of R.C. 2151.414(A), which states, "Upon the finding of a motion pursuant to [R.C.] 2151.413 * * * for permanent custody of a child by a public children services agency * * * *that has temporary custody of the child,* the court shall schedule a hearing * * *." (Emphasis added). If a public children services agency that, at one time, had temporary custody of an abused, neglected, or dependent child could file a motion requesting permanent custody even though it did not currently have temporary custody of the child in question, then the portion of R.C. 2151.414(A) quoted above with emphasis would read "that has *or had* temporary custody of the child." Because it does not, we believe that it is necessary for a public children services agency such as the MCCSB to have current temporary custody of an abused, neglected, or dependent child pursuant to an order of disposition under R.C. 2151.353(A)(2) in order for it to file a motion for permanent custody pursuant to R.C. 2151.413(A).

While R.C. 2151.01 imposes upon courts a duty to liberally interpret and construe the sections in R.C. Chapter 2151, it does not give them license to rewrite those sections. The MCCSB's proposed interpretation of R.C. 2151.413 and 2151.414 would do precisely that. Hence, it must be rejected.

Since MCCSB did not have temporary custody of Coriena at the time it filed its motion for permanent custody of her, the MCCSB lacked standing to file the motion pursuant to R.C. 2151.413(A). Moreover, since the MCCSB had no standing to file the motion for permanent custody of Coriena pursuant to R.C. 2151.413(A), the trial court had no authority to rule on it. Consequently, the court's amended judgment entry of August 3, 1993, granting the MCCSB's motion for permanent custody was error.

■ Instead of filing a motion for permanent custody in October 1991, the MCCSB should have followed either of the following courses of action:

First, the MCCSB could have sought a *new* grant of temporary custody by filing a motion under R.C. 2151.353(E)(2), asking the trial court to modify its April 19, 1991 disposition, wherein, pursuant to R.C. 2151.415(B), the court

terminated the MCCSB's grant of temporary custody of Coriena and replaced it with a grant of protective supervision. If the court had granted its motion, the MCCSB essentially would have had temporary custody of Coriena pursuant to R.C. 2151.353(A)(2), because R.C. 2151.353(E)(2) requires a court to hold a hearing on a motion filed under that section "as if the hearing were the original dispositional hearing." R.C. 2151.353(E)(2). Thus, any order of disposition issued as a result of a motion to modify brought pursuant to R.C. 2151.353(E)(2) has the same status as an order of disposition issued under R.C. 2151.353(A). Accordingly, had the MCCSB been given a new grant of temporary custody, it could have, after waiting six months, filed a motion for permanent custody under R.C. 2151.413.

It might be asked at this point why the MCCSB could not have sought permanent custody of Coriena pursuant to an R.C. 2151.353(E)(2) motion to modify the April 19, 1991 disposition. Our answer to that question is as follows:

By enacting R.C. 2151.413(A) and 2151.414(A), the legislature created a method by which a public children services agency could seek permanent custody of an abused, neglected, or dependent child without having to readjudicate the issues of whether the child is, in fact, abused, neglected, or dependent. As indicated earlier, the agency must currently have temporary custody of that child pursuant to an order of disposition issued under R.C. 2151.353(A)(2) before it can file a motion for permanent custody. See R.C. 2151.413(A) and 2151.353(B) (last paragraph). By specifically setting forth one method by which a public children services agency could gain permanent custody of an abused, neglected, or dependent child without having to readjudicate the abuse, neglect, or dependency issue, we believe that the legislature, by implication, intended to prohibit any alternative method. Thus, if an agency which does not currently have temporary custody of an abused, neglected, or dependent child cannot seek permanent custody of that child under R.C. 2157.413(A), it cannot seek (at least not immediately) permanent custody under a motion to modify a disposition pursuant to R.C. 2151.353(E)(2).

We believe that a second option the MCCBS could have exercised in lieu of filing a motion for permanent custody was to file a *new* complaint pursuant to Juv.R. 10(A) and R.C. 2151.27(A), based on the more recent (October 1991) allegations of abuse or on a dependency theory. This course of action would have entitled Coriena's parents to a new adjudicatory hearing on the allegations of abuse or dependency in the complaint. See R.C. 2151.28(A). This hearing would have had to have been held separately from the dispositional hearing unless this requirement was waived. R.C. 2151.35(B)(1).

Nothing in this opinion or R.C. Chapter 2151 prevents the MCCSB from pursuing either of the two courses of action outlined above. Moreover, nothing in

this opinion prevents the MCCSB from seeking temporary custody of Coriena on an interim basis during the proceedings on a new motion or complaint as it did when it moved for permanent custody in October 1991. See R.C. 2151.33 and Juv.R. 13(B).

The judgment of the trial court is reversed.

*Judgment reversed.*

BROGAN and FAIN, JJ., concur.