OPINION
Mariena Miller Baker ("Baker") appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which granted permanent custody of her daughter, Coriena Miller ("Coriena") to the Montgomery County Children's Services Board ("MCCSB").[1]
Coriena was born on July 29, 1988 and was immediately placed in foster care due to Baker's psychiatric condition. Later that year, Coriena was placed with Baker, but she was removed from Baker's home in May 1990 because of evidence of physical abuse by her stepfather. Coriena was placed in the temporary custody of MCCSB. In April 1991, Coriena was again returned to Baker's care under the protective supervision of MCCSB. In October 1991, Coriena was again removed because of evidence of physical abuse. MCCSB filed a motion for permanent custody, which was granted in 1992. We reversed the trial court's permanent custody decision and remanded the matter to the trial court due to a procedural error. See In re Miller (1995), 101 Ohio App.3d 199. On remand, the trial court granted long term foster care of Coriena to MCCSB because there had been no contact between Baker and Coriena for more than four years. In February 1998, MCCSB filed another motion for permanent custody of Coriena. The trial court granted this motion in November 1998.
 Baker raises three assignments of error on appeal. I. THE TRIAL COURT JUDGE[']S DECISION WAS PREJUDICED BY EVIDENCE PREVIOUSLY KNOWN TO THE COURT NOT ENTERED INTO THE RECORD.
Baker contends that the trial judge had been privy to information that was prejudicial to her because of his prior involvement in her case as a magistrate. She claims that the judge's knowledge of her mental condition tainted the outcome of the proceedings.
Baker's mental condition was part of the record in this case, and a trial court may take judicial notice of its own proceedings in the case under consideration. In re Knotts (1996), 109 Ohio App.3d 267,271, citing Burke v. McKee (1928), 30 Ohio App. 236,238. Indeed, we noted Baker's mental condition in our previous opinion on this matter, and any judge handling this matter would have known about Baker's mental condition. Thus, Baker has not shown that she was prejudiced in any way by the judge's prior involvement in her case. Moreover, pursuant to R.C. 2701.03, the Chief Justice of the Supreme Court of Ohio has exclusive jurisdiction to determine a claim that a common pleas judge is biased or prejudiced. Jones v. Billingham (1995), 105 Ohio App.3d 8,11. Baker should have brought any challenge to the trial judge's objectivity by way of the procedure set forth in R.C.2701.03.
 The first assignment of error is overruled. I. THE DECISION WAS CONTRARY TO LAW IN SECTIONS 2151.413
AND 2151.414 IN THAT IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Baker contends that granting permanent custody of Coriena to MCCSB was unnecessary and was not in the best interests of the child. Baker argues that the length of time that MCCSB allowed the foster care arrangement to continue was evidence that there was no problem with that arrangement. She also claims that her interaction and interrelationship with Coriena militated against the termination of her parental rights and that a secure permanent placement for Coriena could have been achieved without granting permanent custody to MCCSB.
R.C. 2151.414(B)(1) provides that the court may grant permanent custody of a child to a public children services agency if, following a hearing, it determines by clear and convincing evidence that it is in the best interests of the child to grant permanent custody to the agency and that the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. Pursuant to R.C. 2151.414(E), if the court determines that one or more of the following conditions exist as to the child's parents, it must find that the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *;
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
 (9) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect[.]
The record of the case establishes the following facts.
Since the time of Coriena's birth, Baker had never bonded with Coriena, in part because Coriena's birth allegedly resulted from a rape. This situation was aggravated by Baker's borderline intellectual functioning. As a result, and despite extensive intervention by social workers, Baker was unable to develop an interpersonal relationship with Coriena.
When Coriena was very young and lived alternately with Baker and with foster care families, Baker did not demonstrate interest in Coriena's life, did not physically interact with her unless Coriena initiated it, and engaged in very limited verbal communication with Coriena. Baker was also unable to properly supervise Coriena. According to a family member, Baker ignored Coriena when Coriena was in her care, showed a great deal of favoritism toward Coriena's younger half-sister, Cheryl, and interfered with Coriena's attempts to interact with others. Coriena showed rapid improvement in her developmental, emotional, and social skills when she was placed in foster care.
In May 1996, visits between Baker and Coriena resumed after an extended period during which they had not visited at all.[2] There continued to be little interaction or evidence of bonding between the two. During their supervised visits, there was little play, talking, or physical contact. According to caseworkers, Baker behaved very differently with her daughter Cheryl than with Coriena, although she would not acknowledge the disparity. Despite intensive efforts to provide assistance with the visits and with Baker's parenting skills, little improvement occurred over a two year period. In fact, upon observing one of the visits between Baker and Coriena, one caseworker was surprised to learn, based on their limited interaction, that they had been visiting one another for two years. Baker did not seem to know what to do or say to Coriena and made little effort in that regard. Baker was unable to implement skills that she had been taught in parenting classes or suggestions for interaction from the caseworkers. Even when Coriena herself told Baker what she wanted from their visits, Baker did nothing to act on those suggestions. Coriena was frequently upset by the fact that Baker did not show up for visits or by her behavior during visits. Coriena expressed a desire for her foster family to adopt her.
Caseworkers reported that no progress had been made as a result of the most recent two and one-half years of visitation, that Baker did not possess adequate skills to parent Coriena, and that long term foster care was not a good option for Coriena because it lacked permanence. Moreover, caseworkers testified that Coriena's visits with Baker placed a strain on Coriena, that she wanted to be adopted by her foster family, and that her foster family was interested in adopting her. Similarly, Coriena's guardian ad litem concluded that reunification was not possible within the foreseeable future, and he emphasized that Coriena hoped to be adopted by her foster family. Even Baker seemed to concede that reunification with Coriena was inappropriate. Instead, her argument against termination of her parental rights seemed to focus on the benefits of her continued visitation with Coriena.
The trial court concluded that Baker would be unable to provide adequate parental care for Coriena within a reasonable period of time and that Baker had been unable to retain the necessary information from her parenting classes. The court further concluded that Baker and her husband "have not been able to control the child, they have not been able to adequately engage the child or show an interest in parenting the child or engaging the child." Thus, the court found that it would not be in Coriena's best interests to place her with Baker and that it would be in her best interests to be adopted. The court granted MCCSB's motion for permanent custody "in order to facilitate an adoption" and terminated Baker's parental rights.
In our judgment, the trial court did not err in concluding that MCCSB had shown, by clear and convincing evidence, that it was not in Coriena's best interests to continue to attempt to reunify her with her mother when, at age ten, she had been in foster care most of her life, no progress was being made toward reunification, her relationship with her mother was strained at best, and her foster family was interested in adopting her. Although the trial court's decision did not refer to specific statutory factors in reaching this conclusion, the trial court did implicitly rely on numerous factors, including the interaction and interrelationship of Coriena with Baker, Cheryl, and her foster family, Coriena's wishes, her custodial history, and her need and desire for a legally secure placement. See R.C. 2151.414(D)(1-4). The evidence presented on each of these factors weighed heavily in favor of the termination of Baker's parental rights.
Similarly, although the trial court did not expressly refer to the statutory factors in concluding that Coriena could not be placed with Baker within a reasonable period of time, its decision was amply supported by evidence that Baker had not remedied the problems that had contributed to Coriena's removal from her care, that Baker's own mental and emotional limitations made it impossible for her to provide an adequate permanent home for Coriena within the foreseeable future, that Baker had demonstrated a lack of commitment toward Coriena by failing to regularly communicate with her or by other actions showing an unwillingness to provide an adequate home, and that Baker's unwillingness to provide for Coriena's basic necessities made it likely that she would suffer physical or emotional abuse or neglect in Baker's care. See R.C. 2151.414(E) (1, 2, 4, and 9)
Although Baker argues that termination of her parental rights was not necessary, the trial court did not focus solely on what was absolutely necessary for Coriena's well being but properly focused on the broader question of what was in her best interests. The trial court's conclusions that Baker was unable to provide proper care and nurturing for Coriena and that it was in Coriena's best interests to terminate Baker's parental rights were amply supported by the record.
The second assignment of error is overruled.
 III. THE DEFENDANT WAS DENIED HER SIXTH AMENDMENT RIGHT OF COUNSEL DUE TO HER COUNSEL'S INEFFECTIVE ASSISTANCE.
Baker claims that she was denied the effective assistance of counsel because her attorney did not "present testimony or evidence to discount permanent custody as a disposition of the Court," was unfamiliar with juvenile court procedures, and "was unfamiliar with a case that had been going on for nearly nine years."
In order to establish a claim of ineffective assistance of counsel, the record must show that trial counsel's performance fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064; State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs one and two of the syllabus.
With respect to trial counsel's efforts to "discount permanent custody," the record shows that he thoroughly cross-examined the state's witnesses in an effort to undercut the damaging nature of their testimony. Baker has not pointed to any specific factors that might have weighed in her favor, however, and we are aware of none. Without some indication that evidence favorable to Baker existed, we cannot say that counsel was ineffective in failing to present this evidence. Likewise, Baker has pointed to no evidence that trial counsel was unfamiliar with the record of the case or with juvenile court procedures. It appears that counsel's efforts to prevent a permanent custody order were simply constrained by the facts of the case, which weighed heavily in favor of terminating Baker's parental rights.
The third assignment of error is overruled.
The judgment of the trial court will be affirmed.
GRADY, P.J. and YOUNG, J., concur.
Copies mailed to:
Cheryl A. Ross
Keith A. Fricker
Barry S. Galen
Hon. Michael B. Murphy
[1] Coriena's natural father had never been a part of her life and, although represented by counsel, he did not participate in the proceedings below. His parental rights were also terminated, but he is not a party to this appeal.
[2] This gap in visitation was due to the trial court's August 3, 1993 judgment entry granting permanent custody of Coriena to the MCCSB, which was reversed by this court on February 15, 1995 in Miller, supra.