OPINION
{¶ 1} Appellant Ronald Malone ("Ronald") appeals from the May 17, 2006 Judgments of the Court of Common Pleas of Marion County, Family Division, terminating his parental rights and granting permanent custody of Kaylea and Connie Malone to the Marion County Children Services Board ("MCCSB").[1]
 {¶ 2} On March 16, 2004 MCCSB filed a complaint seeking temporary custody of the children and alleging that Kaylea and Connie were neglected and dependent as defined in Ohio Revised Code sections 2151.03
and 2151.04.[2] The complaint alleged a lack of stable housing and unsanitary home conditions at the home of their mother and custodial parent, Jamie Harbin ("Jamie"). On August 3, *Page 3 
2004 the complaint was dismissed by the court without prejudice as the 90-day time limit had elapsed. However, a new complaint was filed by MCCSB that same day alleging that Kaylea and Connie were neglected and dependent and seeking temporary custody of the children.
 {¶ 3} On September 28, 2004 the court conducted a hearing on the August 3, 2004 complaint. In its October 27, 2004 Judgment Entry the court adjudicated the children neglected based on stipulation by all parties. Additionally, the court ordered that the proper disposition under R.C. 2151.353 was to remove Kaylea and Connie from Jamie's home and place them in the temporary custody of MCCSB. The court also ordered all parties to comply with the case plan incorporated into the disposition entry and adopted by the court.
 {¶ 4} On April 20, 2005 the court conducted a review hearing and ordered that MCCSB's temporary custody of Kaylea and Connie would terminate on April 24, 2005 and the children would be returned to Jamie. However, the court ordered that MCCSB would provide protective supervision of the children and that the parties were to comply with the case plan.
 {¶ 5} On June 15, 2005 MCCSB filed a motion for emergency custody requesting that the children be removed from Jamie's custody and placed in the temporary custody of MCCSB. In support of its motion MCCSB alleged that *Page 4 
Connie received second degree burns on her fingers for which Jamie did not seek medical attention.[3]
 {¶ 6} On June 16, 2005 the court conducted a hearing on MCCSB's motion for emergency custody and found Jamie in contempt of the court's orders by allowing the children to have contact with John Harbin and allowing Rebecca Loposser to baby-sit.[4] The court stayed the contempt and ordered that Jamie comply with the court's orders and case plan, however the court stated that any violation could result in the removal of her children. Although the court conducted a review of disposition on July 13, 2005, the children were not removed from Jamie's custody and remained under the protective supervision of MCCSB.
 {¶ 7} On July 20, 2005 MCCSB filed another motion for emergency custody requesting temporary custody of Kaylea and Connie.[5] MCCSB also filed a new complaint on this date alleging that Kaylea and Connie were neglected, abused, and dependent and requesting permanentcustody of the children. The *Page 5 
magistrate held a hearing on MCCSB's motion for emergency custody on July 20, 2005 and found that Kaylea and Connie's continued residence in Jamie's home would be contrary to their best interest and welfare. Accordingly, the magistrate granted temporary custody of the children to MCCSB.
 {¶ 8} A pre-trial was held in this matter on September 2, 2005. In its October 14, 2005 Judgment Entry, the court set a hearing for January 19, 2006 on the "[c]omplaint of Marion County Children Services requesting to modify temporary commitment to permanent commitment."
 {¶ 9} On October 28, 2005 MCCSB filed a motion to dismiss the July 20, 2005 complaint without prejudice. On this same date the court entered a Judgment Entry dismissing this complaint and noting the filing of a new complaint by MCCSB dated October 28, 2005. The Judgment Entry also provided that "[i]t is further ordered sua sponte that all previous orders are adopted by reference until hearing set on the 19th of January, 2006."
 {¶ 10} Ronald was not present at the January 19 hearing as he was in prison for violating parole; however he was represented by counsel. On May 17, 2006 the court entered its Judgment Entry regarding the January 19, 2006 hearing wherein the court found, "by clear and convincing evidence that it is in the best interest of the children to grant permanent care and custody to Marion County Children's Services." *Page 6 
 {¶ 11} Ronald now appeals, asserting one assignment of error.
 ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN GRANTING APPELLEE PERMANENT CUSTODY OF THE CHILDREN WHEN IT FAILED TO FIND THAT THE CHILDREN WERE NEGLECTED OR DEPENDENT.
 {¶ 12} In his sole assignment of error, Ronald alleges that the trial court erred in treating the January 19, 2006 hearing as one addressing a motion for permanent custody and failing to consider whether MCCSB had proved neglect or dependency prior to granting permanent custody of Kaylea and Connie to MCCSB.
 {¶ 13} In reviewing a grant of permanent custody, we note that "[i]t is well recognized that the right to raise a child is an `essential' and `basic' civil right." In re Franklin, 3rd Dist. Nos. 9-06-12, 9-06-13, 2006-Ohio-4841 citing In re Hayes (1997),79 Ohio St.3d 46, 48, 679 N.E.2d 680. The Supreme Court of Ohio has held that a parent "must be afforded every procedural and substantive protection the law allows." In re Hayes, supra, quoting In re Smith (1991),77 Ohio App.3d 1, 16, 601 N.E.2d 45.
 {¶ 14} The trial court is vested with broad discretion in determining the allocation of parental rights and responsibilities for the care of minor children. Blacker v. Wilhelm, 6th Dist. No. WD-04-003, 2005-Ohio-317 citing Miller v. Miller (1983),37 Ohio St.3d 71, 74, 523 N.E.2d 846. As a trial court is in the best *Page 7 
position to weigh witness credibility and evaluate a child's needs, the standard for reviewing a trial court's grant of permanent custody is abuse of discretion. In re Rinaldi, 3rd Dist. No. 1-02-74, 2003-Ohio-2562. It has long been a recognized rule of law that for a reviewing court to overturn a trial court's determination of custody, the appellate court must find that the trial court abused its discretion. Masters v. Masters (1994), 69 Ohio St.3d 83, 85,630 N.E.2d 665. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id. Thus, it is within these constructs that we must examine Ronald's assignment of error.
 {¶ 15} R.C. 2151.353 provides in relevant part as follows:
 (A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 * * *
 (2) Commit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified foster home, or in any other home approved by the court;
 * * *
 (4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed *Page 8 with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child. If the court grants permanent custody under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding.
As updated by 2006 Ohio Laws File 121(Am. Sub. S.B. 238); see alsoIn re Covert (1984), 17 Ohio App.3d 122, 124, 477 N.E.2d 678.
 {¶ 16} A public children services agency may seek permanent custody of an abused, neglected, or dependent child in one of two ways. In reMiller (1995), 101 Ohio App.3d 199, 202, 655 N.E.2d 252. First, the agency can seek permanent custody at the initial disposition hearing pursuant to R.C. 2151.353(A)(4) following an adjudication of abuse, neglect, or dependency. Id. Second, the agency can seek permanent custody at a post-dispositional hearing held pursuant to R.C. 2151.414
upon filing of a motion requesting permanent custody pursuant to R.C.2151.413. Id. We note that the Tenth District has held that "permanent custody should only be granted at the initial disposition hearing under extreme situations where reunification is not possible." In reSmart (1984), 21 Ohio App.3d 31, 35, 486 N.E.2d 147. Therefore, for the most part, permanent custody will be awarded to a public children services agency only at a post-dispositional proceeding. In reMiller (1995), 101 Ohio App.3d 199 at 202. *Page 9 
 {¶ 17} In the present case, we note that MCCSB did not seek permanent custody of Kaylea and Connie pursuant to R.C. 2151.353(A)(4) at the September 28, 2004 hearing which addressed the allegations of neglect contained in the August 3, 2004 complaint. Therefore, we must confine our discussion to the events occurring subsequent to children's adjudication and disposition as stated in the October 27, 2004 Judgment Entry granting temporary custody to MCCSB.
 {¶ 18} R.C. 2151.413 governs the filing of motions for permanent custody and provides, in relevant part, as follows:
 (A) A public children services agency or private child placing agency that, pursuant to an order of disposition under division (A)(2) of section 2151.353 of the Revised Code or under any version of section 2151.353 of the Revised Code that existed prior to January 1, 1989, is granted temporary custody of a child who is not abandoned or orphaned may file a motion in the court that made the disposition of the child requesting permanent custody of the child. (Emphasis added).
 {¶ 19} R.C. 2151.414 establishes the procedures a court must follow and the findings it must make before granting a motion for permanent custody filed pursuant to R.C. 2151.413. In re Arnold, 3rd Dist. Nos. 1-04-71, 1-04-72, 1-04-73, 2005-Ohio-1418. Pursuant to R.C. 2151.414(B)(1), before a trial court can grant permanent custody of a child to a moving agency, it must find, by clear and convincing evidence, that it is in the best interest of the child to grant permanent *Page 10 
custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 (b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
Id. See also In re Franklin, 3rd Dist. Nos. 9-06-12, 9-06-13, 2006-Ohio-4841.
 {¶ 20} When R.C. 2151.413 and 2151.414 are construed with reference to each other, we agree with the Second District and believe that the following conclusion is inescapable: In order for a public children services agency to file a motion for permanent custody of a child previously adjudicated as abused, neglected, or dependent, it must have current temporary custody of that child "pursuant to an order of disposition under R.C. 2151.353(A)(2)." In re Miller (1995),101 Ohio App.3d 199, 203; see also R.C. 2151.413(A).
 {¶ 21} In the present case, MCCSB was granted temporary custody of Kaylea and Connie pursuant to R.C. 2151.353(A)(2) on October 27, 2004. However, that grant of temporary custody terminated in April 2005 when the *Page 11 
children were returned to their mother and placed under protective supervision. Our review of the record confirms that MCCSB did not regain temporary custody of Kaylea and Connie until after the July 20, 2005 hearing addressing MCCSB's motion for emergency custody. Furthermore, we note that the Journal Entry reflecting this hearing was specifically captioned "Entry Granting Pre-dispositional Interim Custody (Shelter Care)". Additionally, we note that the magistrate's grant of temporary custody of the children to MCCSB was done "pending hearing on the complaint [filed July 20, 2005] pursuant to Juvenile Rule 13 and R.C. 2151.33."
 {¶ 22} Therefore, we find that it is clear that MCCSB lacked standing to file a motion for permanent custody as they were not granted temporary custody of Kaylea and Connie pursuant to an order of disposition as required by R.C. 2151.413(A). In so finding, we presume that MCCSB was mindful of the statutory requirements of R.C. 2151.413
and 2151.414 and was aware of its inability to meet these requirements, and therefore chose not to file a motion for permanent custody of Kaylea and Connie in the present case.
 {¶ 23} As an alternative to filing a motion for permanent custody, we note that MCCSB could have filed a motion to modify disposition requesting that the court modify its April 27, 2005 Judgment Entry which terminated MCCSB's *Page 12 
temporary custody of Kaylea and Connie, returned them to their mother, and placed them under protective supervision.
 {¶ 24} R.C. 2151.353(E)(2) governs the filing of motions to modify or terminate disposition and provides in relevant part, as follows:
 Any public children services agency, any private child placing agency, the department of job and family services, or any party, other than any parent whose parental rights with respect to the child have been terminated pursuant to an order issued under division (A)(4) of this section, by filing a motion with the court, may at any time request the court to modify or terminate any order of disposition issued pursuant to division (A) of this section or section 2151.414 or 2151.415 of the Revised Code. The court shall hold a hearing upon the motion as if the hearing were the original dispositional hearing and shall give all parties to the action and the guardian ad litem notice of the hearing pursuant to the Juvenile Rules. If applicable, the court shall comply with section 2151.42 of the Revised Code.
See also In re Barnosky, 4th Dist. No. 03CA32,2004-Ohio-1127. Thus, any order of disposition issued as a result of a motion to modify brought pursuant to R.C. 2151.353(E)(2) has the same status as an order of disposition issued under R.C. 2151.353(A). In reMiller (1995), 101 Ohio App.3d 199 at 205.
 {¶ 25} Instead, we note that MCCSB filed a new complaint[6] pursuant to Juv.R.10(A) and R.C. 2151.27(A) based on the more recent allegations of abuse and neglect and requesting permanent custody of Kaylea and Connie as the *Page 13 
primary disposition. See also R.C. 2151.27(C). However, we note that this course of action should have entitled Kaylea and Connie's parents to a new adjudicatory hearing on the allegations of abuse, neglect, or dependency contained in the new complaint. See R.C. 2151.28(A). This hearing would have had to have been held separately from the dispositional hearing unless this requirement was waived. In reMiller (1995), 101 Ohio App.3d 199 at 205; R.C. 2151.35(B)(1).
 {¶ 26} R.C. 2151.35(B)(1) provides as follows:
 If the court at an adjudicatory hearing determines that a child is an abused, neglected, or dependent child, the court shall not issue a dispositional order until after the court holds a separate dispositional hearing. The court may hold the dispositional hearing for an adjudicated abused, neglected, or dependent child immediately after the adjudicatory hearing if all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing. The dispositional hearing may not be held more than thirty days after the adjudicatory hearing is held. The court, upon the request of any party or the guardian ad litem of the child, may continue a dispositional hearing for a reasonable time not to exceed the time limits set forth in this division to enable a party to obtain or consult counsel. The dispositional hearing shall not be held more than ninety days after the date on which the complaint in the case was filed. (Emphasis added).
 {¶ 27} Our review of the record shows that Ronald was served with a summons and copy of the July 20, 2005 complaint.[7] The record also shows that Ronald's attorney was present at the September 2, 2005 pretrial hearing. Pursuant to the court's October 15, 2005 Judgment Entry reflecting the pretrial hearing, the *Page 14 
court stated that "[t]his matter is set for full day hearing upon the Complaint of Marion County Children's Services requesting to modify temporary commitment to permanent commitment on the 19th
day of January, 2006 . . ."
 {¶ 28} Additionally, the record reflects that Ronald's attorney was present for the October 26, 2005 review of disposition hearing where the court ordered that MCCSB would extend their temporary custody of Kaylea and Connie. The court also stated that "[t]his matter is set for Adjudicatory and Dispositional Hearing days on the 19th
day of January, 2006 . . ." Finally, we note that Ronald's attorney was present at the hearing conducted on January 19, 2006.
 {¶ 29} We agree with MCCSB that the record is clear that no party ever disputed that the January 19, 2006 hearing concerned the permanent custody of Kaylea and Connie. We also agree with MCCSB that none of the parties requested a separate dispositional hearing. However, our review of the record reveals numerous discrepancies between what was stated on the record at the January 19 hearing and what is contained in the court's May 17, 2006 Judgment Entry.
 {¶ 30} Specifically, we note that at the start of the proceedings the court stated: *Page 15 
 "We're here on a complaint filed October the 28th, 2005, by Marion County Children Services alleging Samantha Payne, Connie Malone, and Kaylea Malone to be neglected children."
 {¶ 31} * * *
 "The complaint I previously referred to that was filed asked that permanent commitment of these children be the primary disposition to Marion County Children Services."
 {¶ 32} Furthermore, we note that the attorney for MCCSB made the following remarks during his opening statement:
 "We think the evidence will show by clear and convincing evidence that the children are neglected or dependent and that the appropriate disposition is permanent care and custody to Children Services."
 {¶ 33} At the close of testimony, the court requested that the children's Guardian Ad Litem submit his grounds for permanent custody in writing by January 27, 2006. The court also ordered that the parties submit final written arguments by February 10, 2006. The hearing was adjourned without further remarks.
 {¶ 34} On May 17, 2006 the court entered its Judgment Entry regarding the January 19, 2006 hearing wherein the court found, in relevant part, as follows:
 This matter came before the Court on the Motion for Permanent Custody. . . filed by Marion County Children Services.
 1. The mother, Jamie Harbin has demonstrated a total lack of commitment to her children. . .
 2. The father, Ronald Malone is incarcerated for sexual activity with a minor and that he would not be in a position to have custody of his children for an extended period of time after his release. *Page 16 
 3. As to all three parents, the best indicator of future behavior is past behavior. The Court finds that none can care for their children in the future.
 4. The Court finds, by clear and convincing evidence, that it is in the best interest of the children to grant permanent care and custody to Marion County Children's Services.
 {¶ 35} We find that although Kaylea and Connie had been previously adjudicated neglected on October 27, 2004, this adjudication was done by the court based upon allegations contained in a previous complaint filed by MCCSB. The record does not reflect any adjudication based upon the allegations contained in the October 28, 2005 complaint which was addressed at the January 19, 2006 hearing.
 {¶ 36} Based on the foregoing, we must find that the trial court abused its discretion and did not act in accordance with the provisions of R.C. 2151.27, R.C. 2151.28, R.C. 2151.35, and R.C. 2151.353. Specifically, we find that the court failed to address the issue of adjudication and make a finding as to whether or not Kaylea and Connie were abused, neglected, or dependent prior to finding that it was in the best interest of the children to grant permanent care and custody to MCCSB.
 {¶ 37} Therefore, Ronald's sole assignment of error is sustained and the May 17, 2006 Judgments of the Court of Common Pleas of Marion County, Family Division, terminating Ronald's parental rights and granting permanent *Page 17 
custody of Kaylea and Connie Malone to MCCSB are reversed. These matters are remanded for further proceedings consistent with this opinion.
Judgments reversed.
 PRESTON, J., concurs.
 ROGERS, P.J., concurs in judgment only.
[1] We note that the May 17, 2006 Judgment Entry reflects the heading: "In the matter of: Samantha Payne, Connie Malone and Kaylea Malone." Although Samantha Payne is the biological child of the mother in this case, Samantha is not the biological child of Appellant Ronald Malone and therefore is not a child at issue in the present appeal.
[2] The complaint also states that on March 11, 2003, Samantha Payne and Kaylea Malone were found to be dependent. (See April 14, 2003 Judgment Entry).
[3] MCCSB motion for emergency custody also alleged that Jamie allowed Rebecca Loposser to baby-sit the children until 9:30 p.m. while Jamie was with John Harbin, that Jamie invited John Harbin into her home while the children were present, and that Jamie was not bathing the children. Pursuant to the case plan (as approved and incorporated into the disposition entry by the court in its May 2, 2005 Order) Jamie's mother, Rebecca Loposser, is not allowed to be in Jamie's home for more than four hours and Rebecca must leave the home by 8:00 p.m. due to Rebecca's own history with MCCSB. The case plan also states that Jamie's ex-husband John Harbin is not allowed in her home or around her children due to John's history with MCCSB which includes abuse to Jamie, sexual abuse allegations against his own children, and neglect.
[4] Although the court conducted a hearing on MCCSB's motion for emergency orders on June 16, 2005, the Judgment Entry was not entered by the court until September 13, 2005.
[5] In support of its second motion for emergency custody, MCCSB alleged that Jamie violated the case plan by again allowing Rebecca Loposser to baby-sit, by allowing John Harbin into her home, and by failing to maintain a clean home. MCCSB also alleged that Jamie's home was unsafe due to the presence of an improperly stored firearm.
[6] MCCSB's new complaint was filed on July 20, 2005 at the same time MCCSB filed its motion for emergency custody. The July 20 complaint was dismissed by the trial court on October 28, 2005 due to the 90 day time limit elapsing but a new complaint was filed on October 28, 2005 setting forth the exact same allegations as contained in the July 20, 2005 complaint.
[7] The Return of Service on Summons states that residential service was had upon Jamie Simpkins, brother of Ronald Malone, at 473 Emerson Street, Marion Ohio, on August 15, 2005. *Page 1