**In re MALONE.**

[Cite as *In re Malone,* 178 Ohio App.3d 219, 2008-Ohio-4412.]

Court of Appeals of Ohio,
Third District, Marion County.

Nos. 9–08–08 and 9–08–09.

Decided Sept. 2, 2008.

Dustin J. Redman, for appellant.

James P. Luton, for appellee.

Ted B. Babich, guardian ad litem.

---

PRESTON, Judge.

{¶ 1} Father-appellant, Ronald Malone, appeals the Marion County Court of Common Pleas' grant of permanent custody of his children Connie and Kaylea Malone to the Marion County Children Services Board ("MCCSB"). For reasons that follow, we reverse.

{¶ 2} The factual background of this case was set forth in Ronald's first appeal to this court. *In re Malone*, 3d Dist. Nos. 9–06–28 and 9–06–29, 2007-Ohio-769, 2007 WL 572178 (*"Malone I"*). We incorporate those facts and restate[1] them herein:

{¶ 3} On March 16, 2004, MCCSB filed a complaint seeking temporary custody of the children and alleging that Kaylea and Connie were neglected and dependent as defined in R.C. 2151.03 and 2151.04.[2] The complaint alleged a lack of stable housing and unsanitary home conditions at the home of their mother and custodial parent, Jamie Harbin. On August 3, 2004, the complaint was dismissed by the court without prejudice because the 90–day time limit had elapsed. However, a new complaint was filed by MCCSB that same day, alleging that Kaylea and Connie were neglected and dependent and seeking temporary custody of the children.

{¶ 4} On September 28, 2004, the court conducted a hearing on the August 3, 2004 complaint. In its October 27, 2004 judgment entry, the court adjudicated the children neglected based on stipulation by all parties. Additionally, the court ordered that the proper disposition under R.C. 2151.353 was to remove Kaylea and Connie from Jamie's home and place them in the temporary custody of MCCSB. The court also ordered all parties to comply with the case plan incorporated into the disposition entry and adopted by the court.

{¶ 5} On April 20, 2005, the court conducted a review hearing and ordered that MCCSB's temporary custody of Kaylea and Connie would terminate on April 24,

---

1. The court notes that the facts and corresponding footnotes in this opinion were taken word-for-word from *Malone I*, except that additional facts were added and small grammatical changes were made as necessary. Also, the numbering of our footnotes has changed from *Malone I* to this present appeal.

2. The complaint also states that on March 11, 2003, Samantha Payne and Kaylea Malone were found to be dependent. (See April 14, 2003 judgment entry.)

2005, and the children would be returned to Jamie. However, the court ordered that MCCSB would provide protective supervision of the children and that the parties were to comply with the case plan.

{¶ 6} On June 15, 2005, MCCSB filed a motion for emergency custody, requesting that the children be removed from Jamie's custody and placed in the temporary custody of MCCSB. In support of its motion, MCCSB alleged that Connie received second-degree burns on her fingers for which Jamie did not seek medical attention.[3]

{¶ 7} On June 16, 2005, the court conducted a hearing on MCCSB's motion for emergency custody and found Jamie in contempt of the court's orders by allowing the children to have contact with John Harbin (her ex-husband) and allowing Rebecca Loposser (her mother) to babysit.[4] The court stayed the contempt and ordered that Jamie comply with the court's orders and case plan; however, the court stated that any violation could result in the removal of her children. Although the court conducted a review of disposition on July 13, 2005, the children were not removed from Jamie's custody and remained under the protective supervision of MCCSB.

{¶ 8} On July 20, 2005, MCCSB filed another motion for emergency custody, requesting temporary custody of Kaylea and Connie.[5] MCCSB also filed a new complaint on this date, alleging that Kaylea and Connie were neglected, abused, and dependent and requesting *permanent custody* of the children. The magistrate held a hearing on MCCSB's motion for emergency custody on July 20, 2005, and found that Kaylea and Connie's continued residence in Jamie's home would be contrary to their best interest and welfare. Accordingly, the magistrate granted temporary custody of the children to MCCSB.

---

3. The MCCSB motion for emergency custody also alleged that Jamie allowed Rebecca Loposser to babysit the children until 9:30 p.m. while Jamie was with John Harbin, that Jamie invited John into her home while the children were present, and that Jamie was not bathing the children. Pursuant to the case plan (as approved and incorporated into the disposition entry by the court in its May 2, 2005 order), Jamie's mother, Rebecca, is not allowed to be in Jamie's home for more than four hours, and Rebecca must leave the home by 8:00 p.m. due to her own history with MCCSB. The case plan also states that Jamie's ex-husband, John, is not allowed in her home or around her children due to John's history with MCCSB, which includes abuse of Jamie, sexual abuse allegations against his own children, and neglect.

4. Although the court conducted a hearing on MCCSB's motion for emergency orders on June 16, 2005, the judgment entry was not entered by the court until September 13, 2005.

5. In support of its second motion for emergency custody, MCCSB alleged that Jamie violated the case plan by again allowing Rebecca to baby-sit, by allowing John into her home, and by failing to maintain a clean home. MCCSB also alleged that Jamie's home was unsafe due to the presence of an improperly stored firearm.

{¶ 9} A pretrial was held in this matter on September 2, 2005. In its October 14, 2005 judgment entry, the court set a hearing for January 19, 2006, on the "[c]omplaint of Marion County Children Services requesting to modify temporary commitment to permanent commitment."

{¶ 10} On October 28, 2005, MCCSB filed a motion to dismiss the July 20, 2005 complaint without prejudice. On this same date, the court entered a judgment entry dismissing this complaint and noting the filing of a new complaint by MCCSB dated October 28, 2005. The judgment entry also provided that "[i]t is further ordered sua sponte that all previous orders are adopted by reference until hearing set on the 19th of January, 2006."

{¶ 11} Ronald was not present at the January 19 hearing because he was in prison for violating parole; however, he was represented by counsel. On May 17, 2006, the court entered its judgment entry regarding the January 19, 2006 hearing wherein the court found "by clear and convincing evidence that it is in the best interest of the children to grant permanent care and custody to Marion County Children's Services."

{¶ 12} Thereafter, Ronald filed an appeal with this court, arguing that the trial court erred in granting MCCSB's motion for permanent custody. On February 26, 2007, this court reversed the trial court's grant of permanent custody, finding that:

[T]he trial court abused its discretion and did not act in accordance with the provisions of R.C. 2151.27, R.C. 2151.28, R.C. 2151.35, and R.C. 2151.353. Specifically, we find that the court failed to address the issue of adjudication and make a finding as to whether or not Kaylea and Connie were abused, neglected, or dependent prior to finding that it was in the best interest of the children to grant permanent care and custody to MCCSB.

*Malone I*, 2007-Ohio-769, 2007 WL 572178, at ¶ 36. On January 30, 2008, almost one year following our remand, the trial court entered judgment again, this time expressly stating: "[T]he evidence is clear and convincing that these children are Neglected and Dependant at the time of the hearing." The trial court then set forth its R.C. 2151.414 findings of fact and concluded that granting MCCSB's motion for permanent custody was in the children's best interests.

{¶ 13} On February 26, 2008, Ronald filed two notices of appeal and briefs with this court, asserting one assignment of error for review.

## ASSIGNMENT OF ERROR

The trial court erred in granting appellee permanent custody of the children when it failed to conduct a separate dispositional hearing after finding that the children were neglected and dependent.

{¶ 14} In his sole assignment of error, Ronald argues that the trial court erred by failing to conduct a *separate* dispositional hearing after adjudicating the children neglected and dependent. Ronald's argument is twofold: first, he argues that the trial court lacked authority to proceed to disposition at the January 19, 2006 hearing because the trial court did not first make a neglect/dependency finding; and therefore, no dispositional hearing occurred on January 19. Second, Ronald argues that even assuming that the trial court conducted a dispositional hearing on January 19, the trial court erred by failing to bifurcate the hearing as required by Juv.R. 34(A) and *In re Baby Girl Baxter* (1985), 17 Ohio St.3d 229, 17 OBR 469, 479 N.E.2d 257.

{¶ 15} MCCSB, on the other hand, argues that pursuant to R.C. 2151.35(B)(1), the trial court was permitted to hold the dispositional hearing immediately following the adjudicatory proceeding if, prior to the adjudicatory hearing, all parties were served with the necessary hearing documents. MCCSB further argues that the parties were aware that the trial court intended to proceed directly to disposition; Ronald did not object; and therefore, Ronald has waived this issue on appeal. MCCSB also alleges that Ronald was not prejudiced by the single proceeding because he had notice and was represented by counsel at the hearing.

{¶ 16} In *Malone I,* this court found that for purposes of the January 19, 2006 hearing, the trial court was required to proceed under R.C. 2151.35 and 2151.353 because the court was proceeding on a newly filed neglect and dependency complaint. R.C. 2151.35(B)(1) provides:

> If the court at an adjudicatory hearing determines that a child is an abused, neglected, or dependent child, the court shall not issue a dispositional order until after the court holds a separate dispositional hearing. The court may hold the dispositional hearing for an adjudicated abused, neglected, or dependent child immediately after the adjudicatory hearing if all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing.

R.C. 2151.353(A) provides: "If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition * * *." As this court has stated before, "A finding or adjudication of abuse, neglect, or dependency is a prerequisite to an order of permanent custody under R.C. 2151.353(A)(4)." *In re Knotts* (1996), 109 Ohio App.3d 267, 270, 671 N.E.2d 1357. The trial court was also required to comply with the juvenile rules. Juv.R. 34(A) provides:

> Where a child has been adjudicated as an abused, neglected, or dependent child, the court shall not issue a dispositional order until after it holds a separate dispositional hearing. * * * The dispositional hearing may be held

immediately after the adjudicatory hearing if all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing *and* all parties consent to the dispositional hearing being held immediately after the adjudicatory hearing.

(Emphasis added).

{¶ 17} In *Malone I*, this court found that the trial court was required to proceed under R.C. 2151.35 and 2151.353, not R.C. 2151.414, because MCCSB filed a new complaint and MCCSB did not have temporary custody of Kaylea and Connie pursuant to an order of disposition under R.C. 2151.353(A)(2). As such, we stated that Kaylea and Connie's parents were "entitled * * * to a new adjudicatory hearing on the allegations of abuse, neglect, or dependency contained in the new complaint." *Malone I*, 2007-Ohio-769, 2007 WL 572178, at ¶ 20–26 and 36. Furthermore, we stated that the new adjudicatory hearing "would have had to have been held separately from the dispositional hearing unless this requirement was waived." Id. at ¶ 25. With these requirements in mind, we reviewed the record and determined that it did "not reflect any adjudication based upon the allegations contained in the October 28, 2005 complaint which was addressed at the January 19, 2006 hearing." Id. at ¶ 35. Under these circumstances, we found that the trial court abused its discretion by failing to follow the applicable statutes and, specifically, for "fail[ing] to address the issue of adjudication and make a finding as to whether or not Kaylea and Connie were abused, neglected, or dependent prior to finding that it was in the best interest of the children to grant permanent care and custody to MCCSB." Id. at ¶ 36.

{¶ 18} Since the trial court did not find that the children were neglected/dependent at the January 19, 2006 hearing, the trial court could not, at that time, properly proceed to disposition. Accordingly, the January 19 hearing cannot satisfy the "separate dispositional hearing" requirement necessary for the court's dispositional order. R.C. 2151.35(B)(1); 2151.353(A); Juv.R. 34(A). See also *Knotts*, 109 Ohio App.3d at 270, 671 N.E.2d 1357. Furthermore, nothing in the record indicates that the trial court ever held a proper "separate" dispositional hearing as required. Almost one year following our remand, the trial court did not hold any new adjudicative or dispositional hearings, but instead simply entered a new judgment based on the January 19 hearing, which specifically found that Kaylea and Connie "are Neglected and Dependent at the time of the hearing."

{¶ 19} Since the January 19 hearing was not a proper dispositional hearing and no dispositional hearing was ever held following our remand, we conclude that the trial court has failed to hold a separate dispositional hearing as required by R.C. 2151.35(B)(1) and Juv.R. 34(A) prior to its orders of disposition—both the May

17, 2006 order granting MCCSB permanent custody and the January 30, 2008 order granting the same.

{¶ 20} Furthermore, Ronald's argument that the trial court erred by failing to bifurcate the January 19 hearing also has merit. When a trial court proceeds on an original neglect, dependency, or abuse complaint under R.C. 2151.35(B)(1), it is required to bifurcate the proceedings into an adjudication and a disposition. *Baby Girl Baxter,* 17 Ohio St.3d at 233, 17 OBR 469, 479 N.E.2d 257; *In re J.H.,* 12th Dist. Nos. CA2005–11–019 and CA2005–11–020, 2006-Ohio-3237, 2006 WL 1726669, ¶ 22–27. A trial court need not hold these hearings on separate days or even at separate times; however, "there must be a definitive bifurcation of the proceedings so that the parties are afforded an opportunity to present evidence at both the adjudicatory and dispositional hearings." *In re J.H.,* 2006-Ohio-3237, 2006 WL 1726669, at ¶ 27. A trial court's failure to bifurcate proceedings, as required both by R.C. 2151.35(B)(1) and Juv.R. 34(A), constitutes reversible error. *Baby Girl Baxter,* 17 Ohio St.3d at 233, 17 OBR 469, 479 N.E.2d 257.

{¶ 21} MCCSB admits that the trial court failed to bifurcate the January 19 proceedings; however, MCCSB contends that Ronald has waived this error because he (1) never requested a separate dispositional hearing and (2) failed to object at the January 19 hearing on this basis. Furthermore, MCCSB argues that pursuant to R.C. 2151.35(B)(1), the trial court is permitted to proceed directly to disposition if, prior to the adjudicatory hearing, all parties were served with the necessary documents.

{¶ 22} MCCSB's arguments lack merit. Pursuant to R.C. 2151.35(B) (1), "[t]he court may hold the dispositional hearing for an adjudicated abused, neglected, or dependent child immediately after the adjudicatory hearing if all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing." However, Juv.R. 34(A) requires not only that the parties have the required documentation but also that "all parties consent to the dispositional hearing being held immediately after the adjudicatory hearing." Since Juv.R. 34(A) is procedural, it controls over, and here supplements, R.C. 2151.35(B)(1)'s single requirement. *In re J.H.,* 2006-Ohio-3237, 2006 WL 1726669, at ¶ 29–30, citing *In re Vickers Children* (1983), 14 Ohio App.3d 201, 14 OBR 228, 470 N.E.2d 438; *In re Jones* (1985), 29 Ohio App.3d 176, 29 OBR 206, 504 N.E.2d 719. Accordingly, the trial court may proceed directly to disposition following the adjudication if both (1) "all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing" and (2) "all parties consent to the dispositional hearing being held immediately after the adjudicatory hearing." Juv.R. 34(A). Like the court in *In re J.H.,* supra, we find no indication in the record before us that Ronald, through counsel,

consented to the dispositional hearing being held immediately following the adjudicatory hearing or consented to a combined adjudicatory/dispositional hearing.[6]  2006-Ohio-3237, 2006 WL 1726669, at ¶ 30–32.

{¶ 23} We must also reject MCCSB's argument that Ronald waived this error.  To begin with, Ronald was not required to request a separate dispositional hearing as MCCSB argues.  Rather, the trial court was required to provide a separate dispositional hearing unless Ronald waived this requirement.  *Malone I,* 2007-Ohio-769, 2007 WL 572178, at ¶ 25, citing *In re Miller* (1995), 101 Ohio App.3d 199, 205, 655 N.E.2d 252.  Furthermore, based upon the facts and circumstances of this case, we cannot find that Ronald waived the issue of bifurcation because he failed to object below.  MCCSB correctly points this court to the general rule that a party waives on appeal errors that could have corrected below by a timely objection.  See, e.g., *In re Pieper Children* (1993), 85 Ohio App.3d 318, 328, 619 N.E.2d 1059.  However, as we noted in *Malone I,* the record in this case reveals numerous discrepancies between what was stated on the record during the January 19, 2006 hearing and what was contained in the May 17, 2006 judgment entry.  Of consequence to this appeal is the fact that the court erred by proceeding as if it were modifying an order of temporary custody to permanent custody and by not proceeding as necessary on the new complaint.  That the court, itself, was confused over the nature of the January 19, 2006 hearing leads us to conclude that the parties were likewise under a misunderstanding as to the nature of the proceedings.

{¶ 24} Furthermore, it was unclear from the record whether the trial court intended to hold a subsequent or further dispositional hearing.  At the close of the January 19 hearing, the trial court stated the following concerning further possible proceedings:

MR. BABICH (GAL):  And, Your Honor, I will tell the Court, and I'd be glad to put it in writing or verbally as the Court wishes, that my recommendation will be that the permanent custody be granted and I'll be glad to put my reasons—state my reasons now or put them in the record.

THE COURT:  I think you need to submit that in written form because then counsel will have an opportunity to actually cross-examine you.

MR. BABICH:  Do you want to set a date, Your Honor, or do you just want them to indicate whether they need a date?

---

6.  As a note of instruction to the trial courts, meeting these criteria might well be met simply by asking the parties at the close of the adjudicatory hearing whether (1) they were given all the documents necessary to proceed to disposition prior to the adjudicatory proceeding and (2) they are prepared and willing to proceed to disposition at that time.

THE COURT: In your opinion, will you have a final report done by a week from tomorrow, the 27th of January?

MR. BABICH: I think so, yes, Your Honor.

THE COURT: And counsel will have another week, to February 3rd, if they wish to examine regarding the guardian ad litem. That's all that will be done. Then if that's requested, a date will be set within a matter of a couple days, even if we do it at 8:00 in the morning. Absent that, then you can submit final written arguments by February 10th. Now does all counsel have copies of Mr. Babich's report filed January the 10th?

MR. COLLINS: Yes, Your Honor.

MR. REDMOND: Yes.

MR. ROSTON: Yes.

MR. BABICH: And I don't know whether the report caught up with you, Your Honor, but I filed one on the 17th of my interview with the kids and I distributed that, but it may not have reached you.

THE COURT: Pardon?

MR. BABICH: I said there was also one filed on the 17th.

THE COURT: Yes. Everyone has copies of that?

MR. REDMOND: Yes.

MR. ROSTON: Yes, Your Honor.

THE COURT: And Mr. Babich has indicated what his recommendation probably will be, so I imagine that your report will not be too long.

MR. BABICH: Yes.

THE COURT: But that's up to you. Anything further, Mr. Luton?

MR. LUTON: No, Your Honor. Just to be sure, you want final arguments February 10th?

THE COURT: Yes. That's assuming no one requests oral examination of Mr. Babich. But I think the law says now we have to provide that opportunity.

MR. LUTON: Sure, I agree.

THE COURT: And that date, then, would be moved a week further from the date that we'd examine Mr. Babich, but if someone requests it by the 3rd, we'll do it the 6th, 7th, 8th. All right. Court will be adjourned. That's all.

{¶ 25} The record fails to indicate whether the trial court ever held a subsequent hearing, and, to this date, no further adjudicatory or dispositional hearings were held. Because the trial court and the parties were operating under the misperceptions that (1) the January 19 hearing was a hearing to modify temporary custody to permanent custody (and not—as it really was—a new adjudication and disposition based on a new complaint) and (2) a further hearing

would possibly be held to cross-examine the GAL, we cannot find that Ronald waived the bifurcation requirement. If the parties were under the false impression that the hearing was simply to modify the custody order pursuant to R.C. 2151.414, then no one *would* object to a combined hearing since bifurcation is not required in that instance. *In re Hattery* (Aug. 28, 1986), 3d Dist. Nos. 9–85–11 and 9–85–12, 1986 WL 9657; *In re Grimes* (Aug. 2, 1988), 3d Dist. Nos. 8–86–10, 8–86–11, and 8–86–12, 1988 WL 80498; *In re Jones,* 29 Ohio App.3d at 178–179, 29 OBR 206, 504 N.E.2d 719. Likewise, if the parties were under the misperception that a further dispositional hearing would be held, then any objection to bifurcation would have been senseless. Therefore, under these circumstances, we cannot conclude that Ronald waived this issue on appeal.

{¶ 26} Since the trial court was required to bifurcate the January 19 hearing and failed to so, the court committed reversible error.

{¶ 27} For all these reasons, Ronald's assignment of error is sustained.

{¶ 28} Having found error prejudicial to the appellant herein, we reverse the judgment of the trial court and remand the causes for the purposes of compliance with R.C. 2151.35(B)(1) and Juv.R. 34(A), specifically to (1) hold a separate dispositional hearing, and then to (2) enter a new judgment entry reflecting the court's disposition.

Judgments reversed
and causes remanded.

SHAW, P.J., concurs in judgment only.

WILLAMOWSKI, J., concurs.